XEROX CORPORATION v OAKLAND COUNTY

Docket No. 116684. Submitted March 20, 1991, at Lansing. Decided
    October 8, 1991, at 9:10 A.M.

    Xerox Corporation petitioned the Tax Tribunal for review of
    personal property tax assessments levied by Oakland County
    for the tax years 1980 through 1982. The Tax Tribunal issued a
    judgment in favor of the respondent, and the Court of Appeals,
    MacKenzie, P.J., and Allen and G.W. Crockett, III, JJ.,
    affirmed the judgment. 157 Mich App 640 (1987). The peti-
    tioner, after paying assessments and interest from the date of
    the judgment of the Tax Tribunal, challenged the imposition of
    interest by filing another petition in the Tax Tribunal. The
    tribunal ordered the interest payment refunded with interest,
    determining that MCL 205.737(4); MSA 7.650(37)(4), upon
    which the respondent had relied, did not provide authority for
    the imposition of interest. The respondent appealed.

    The Court of Appeals *held:*

    1. The Tax Tribunal had jurisdiction of the petitioner's
challenge regarding interest. MCL 205.731; MSA 7.650(31)
grants the Tax Tribunal exclusive and original jurisdiction of a
proceeding for direct review of a final decision relating to an
assessment under the property tax laws. In this case, the
respondent's interest levy was necessarily related to the per-
sonal property tax assessment against the petitioner.

    2. MCL 205.737(4); MSA 7.650(37)(4) does not provide author-
ity for the interest imposed by the respondent. Section 37(4)
relates to the payment of interest on a refund of an overassess-
ment after a taxpayer's successful challenge of an assessment
by petition to the Tax Tribunal.

    3. The Legislature, in creating the Tax Tribunal to replace
the State Tax Commission and the circuit courts as the forum
for the resolution of assessment disputes, intended that prop-
erty tax payments due a taxing authority as a result of a
resolution of an assessment dispute be subject to interest just
as refunds of overassessments are subject to interest. In either
instance, interest is imposed not as punishment, but as compen-
sation for the lost use of the funds suffered by the taxing
authority or the taxpayer. Because the parties did not address

this question of legislative intent, remand is required for briefing, argument, and decision.

4. The Tax Tribunal erred in ordering that the petitioner's interest payment be refunded with interest pursuant to MCL 205.737(4); MSA 7.650(37)(4). Section 37(4) applies only to refunds of overassessments, not to refunds of interest payments.

Affirmed in part, reversed in part, and remanded.

*Kasiborski, Ronayne & Flaska* (by *Chester E. Kasiborski, Jr.,* and *John J. Ronayne, III*), for the petitioner.

*Jack C. Hays,* Corporation Counsel, *Donald F. Slavin,* Assistant Corporation Counsel, and *Shifman & Carlson, P.C.* (by *Burton R. Shifman*), for the respondent.

Before: Hood, P.J., and Jansen and G. S. Allen,* JJ.

Per Curiam. In a prior action, petitioner Xerox Corporation challenged respondent Oakland County's assessment of petitioner's personal property for the years 1980, 1981, and 1982. On August 3, 1984, the Michigan Tax Tribunal issued a judgment in respondent's favor, which was affirmed by this Court in *Xerox Corp v Oakland Co,* 157 Mich App 640; 403 NW2d 188 (1987). After the Supreme Court declined review, 428 Mich 913 (1987), respondent billed petitioner for taxes consistent with the tribunal's decision, and included an interest charge computed from the date of the tribunal's judgment to the due date of the tax bill. Petitioner timely paid the taxes and interest billed by respondent, but filed another petition in the Tax Tribunal challenging respondent's authority to charge interest.

In its January 11, 1989, order, the tribunal

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

determined that it had jurisdiction to decide petitioner's challenge regarding interest, that petitioner complied with the prerequisites to bringing such a challenge by timely paying the taxes and interest, and that MCL 205.737(4); MSA 7.650(37)(4) did not authorize respondent to add interest to the taxes billed. The Tax Tribunal granted petitioner's motion for summary disposition, denied respondent's cross-motion for summary disposition, and ordered respondent to refund the interest charged to and paid by petitioner. From this January 11, 1989, order of the Tax Tribunal, respondent appeals as of right.

On appeal, respondent contends that the Tax Tribunal was without jurisdiction to decide petitioner's claim, which challenged only the interest portion of its tax bill. We disagree.

Section 31 of the Tax Tribunal Act, MCL 205.731; MSA 7.650(31), provides:

> The tribunal's exclusive and original jurisdiction shall be:
> (a) A proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency *relating to* assessment, valuation, rates, special assessments, allocation, or equalization, under property tax laws.
> (b) A proceeding for refund or redetermination of a tax under the property tax laws. [Emphasis added.]

In *Padula Builders v Brighton Twp,* 4 MTTR 216, 217-218 (Docket No. 66849, March 19, 1986), the tribunal determined that it had jurisdiction over the petitioner's challenge of penalty and interest charges because they arose directly from ad valorem assessments over which it clearly possessed jurisdiction. We find, in light of the plain language of the statute, that this rationale is

correct. Respondent's inclusion of interest from the date of the tribunal's previous judgment is necessarily *related to* the assessment of petitioner's tax liability. We therefore hold that the Tax Tribunal has jurisdiction under § 31 to entertain a challenge of the charging of interest on a tax assessment.

Respondent next argues that the Tax Tribunal erred in determining that § 37(4) of the act did not permit respondent to charge interest on the increased tax assessment from the August 3, 1984, judgment until the February 2, 1988, due date for the tax bill. We disagree.

Section 37 of the Tax Tribunal Act, MCL 205.737; MSA 7.650(37), governs the procedures for resolving a taxpayer's petition challenging a property assessment. This section provides in part:

> (4) If subsequent to the filing of the petition *the taxpayer paid additional taxes* as a result of the unlawful assessments on the same property, or if in subsequent years unlawful assessments were made against the same property, *the taxpayer* after protest before the board of review and not later than the filing deadline as prescribed by section 35(2) except as provided by subsection (5), *may amend his or her petition to join all of his or her claims* for lawful assessment determination and *for refund* by reason of payments based on the unlawful assessments. *Any sum* determined by the tribunal to have been *unlawfully paid shall bear interest from* the date of payment to the date of judgment *and the judgment shall bear interest to* date of its payment. Interest required by this subsection shall accrue for periods before April 1, 1982 at a rate of 6% per year, shall accrue for periods after March 31, 1982 but before April 1, 1985 at a rate of 12% per year, and shall accrue for periods after March 31, 1985 at a rate of 9% per year. [Emphasis added.]

We conclude that respondent's reliance on this provision is misplaced. The clear language of § 37(4) indicates that it applies only to taxpayers' claims regarding aspects of assessments. The provision does not authorize interest on "judgments" rendered in favor of a taxing authority, but only on sums determined to have been unlawfully *paid by a taxpayer* based on a petition *brought by the taxpayer.* Respondent's reliance on *Padula, supra,* as authority for the imposition of interest also is misplaced. *Padula* merely affirmed the taxing agency's authority to charge interest upon *unpaid* tax assessments as legal compensation for its lost use of tax monies. 4 MTTR 218. However, unlike *Padula,* petitioner timely paid the taxes and interest billed by respondent, a necessary prerequisite under the act. Accordingly, we hold that § 37(4) of the Tax Tribunal Act does not permit respondent to charge interest on petitioner's tax liability.[1]

We are constrained, however, to continue consideration of the interest question. Although we conclude that § 37(4) is applicable only to refunds due the taxpayer on overassessments, we are not con-

---

[1] Judge ALLEN agrees with this conclusion despite being a member of the panel that arrived at a contrary conclusion in *Thrifty Royal Oak, Inc v City of Royal Oak,* 130 Mich App 207; 344 NW2d 305 (1983).

Believing that the assessments of its retail store and related buildings were too high, Thrifty Royal Oak, Inc, appealed to the Tax Tribunal, which not only rejected Thrifty's claim, but also increased the proposed assessments and ordered collection of the additional taxes *including interest* at 6% for the length of time the taxes escaped collection. On appeal, the *Thrifty* panel, in a 2-1 decision, affirmed the method employed by the Tax Tribunal in arriving at the higher assessments and affirmed the amount of interest imposed.

Oakland County argues that *Thrifty Royal Oak* is authority for holding that, pursuant to § 37(4), interest may be charged on the increased assessment. However, the argument made by Xerox in the instant case—that *no* interest may be charged under § 37(4) on an assessment increased by a decision of the tribunal—was not advanced in *Thrifty Royal Oak.* There, the sole argument was which rate of interest should apply to a tribunal judgment, not whether any interest should be applied at all.

vinced that the Legislature intended to authorize interest where an assessment is decreased but to preclude interest in situations where the assessment is increased. To so conclude would provide an incentive for taxpayers to claim a lower assessment and retain the use of their funds due on the higher eventual assessment during the extended period of litigation following the tribunal's decision. In the instant case, for example, the interest on the higher assessment is approximately $123,000, as set forth in the tribunal's judgment of August 3, 1984.[2] The rationale for authorizing the payment of interest is clearly set forth in *Padula, supra* at 218:

> Interest charged upon unpaid tax assessments, whether ad valorem property tax assessments, or the various nonproperty assessments issued by governmental agencies, is not intended to be a punishment, but rather simply reflects the fact that whomever had possession of the tax money involved had the option of keeping it invested and accruing interest. *If such a party is the unit of government, it is required to refund with interest.* If such party is the taxpayer, he or she is required to pay interest at a statutory rate. [Emphasis added.]

In establishing the Tax Tribunal as the forum to replace the State Tax Commission and the circuit courts for resolution of disputes regarding the level of assessments, the Legislature needed to

---

[2] No claim is made for interest on the 1980, 1981, and 1982 taxes, which were in litigation at the Tax Tribunal level, for the period between their respective due dates had they not been contested and the Tax Tribunal judgment of August 3, 1984. Oakland County claims interest only for the 3½-year period between August 3, 1984 (the date of the tribunal's determination) and March 1, 1988 (the date the taxes were paid).

focus narrowly on whether and how much interest should be due a taxpayer in whose favor the Tax Tribunal has ruled on a claimed overassessment. There was no need for the Legislature to deal with interest in the case of an underassessment or underpayment, because that had already been provided for in 1943 PA 122, which established the Revenue Division of the Department of Treasury. MCL 205.1 *et seq.*; MSA 7.657(1) *et seq.* Section 23(2) of that act provides in part:

> If the amount paid is less than the amount which should have been paid . . . the deficiency, together with interest at the current monthly rate of 1 percentage point above the adjusted prime rate per annum from the time the tax was due, and until paid, shall become due and payable after notice and conference as provided in this act. [MCL 205.23(2); MSA 7.657(23)(2).]

The State Tax Commission was an administrative agency within and under the jurisdiction of the Department of Treasury, as is the Tax Tribunal, which replaced the commission.[3] As such, the tribunal would seem to be subject to the foregoing statutory provision. The only question remaining is when is a tax "due" in situations where the taxpayer's challenge of an assessment results in a finding of underassessment. Except for Judge Bronson's statement in *Thrifty Royal Oak, Inc v City of Royal Oak,* 130 Mich App 207; 344 NW2d 305 (1983), that the legality of an assessment cannot be determined "until all appeals" have

---

[3] Governor John Engler has transferred the Michigan Tax Tribunal from the Michigan Department of Treasury to the Michigan Department of Commerce, by a recently issued executive order. This transfer does not affect our analysis because the Tax Tribunal was under the jurisdiction of the Department of Treasury at all times pertinent to the instant appeal.

been resolved,[4] we have discovered only one published decision that expressly deals with the question how appeals within the judicial system affect the date on which a tax is due. In *Schmidt v Illinois Dep't of Revenue*, 163 Ill App 3d 269, 273; 114 Ill Dec 818; 516 NE2d 973 (1987), the court held that the statutory language "all taxes due" meant taxes due at the conclusion of administrative review proceedings, rather than amounts that might ultimately be found due following judicial review.

To the extent that Judge BRONSON's statement is authority for the proposition that a tax is not due until *all* appeals, including appeal from the level of assessment set by the Tax Tribunal, have been exhausted, we reject the statement. In our opinion Judge BRONSON was referring only to when a tax became "delinquent," as that term is used in the general property tax statute regarding delinquencies, MCL 205.737(4); MSA 7.650(37)(4). In Judge ALLEN's separate opinion in *Thrifty Royal Oak, supra*, he found error in the threshold issue regarding the method used to find the level of assessment and, thus, found it unnecessary to discuss the issue of interest.

While an Illinois decision might be distinguished on grounds that it is from a foreign jurisdiction with its own tax idiosyncrasies, we believe that, in general, a tax is due on the date that it is assessed by the Department of Treasury, whether by an administrative official, such as the Commissioner of Revenue, MCL 205.25(2); MSA 7.657(25)(2), or by

---

[4] "[T]axes cannot be delinquent until they have been lawfully placed upon the tax rolls and remain unpaid, the taxes may not be placed on the rolls until their legality has been established, and the legality of the assessment, in turn, cannot be accomplished until all appeals, including the present one to this Court, have been resolved. In the present case, the legality of the assessment and the tribunal's methods of deriving that assessment remain disputed through the present appeal." *Thrifty Royal Oak, supra* at 238.

an administrative tribunal such as the Tax Tribunal. Where the level of assessment is held in favor of the taxing authority, from that date forward, the money belongs to the taxing authority, and the taxpayer is justly held liable to make good the lost time-value of the money while judicial proceedings ran their course. See *Padula, supra.* Reinforcement for this conclusion is found in § 152a(2) of the General Property Tax Act, MCL 211.152a(2); MSA 7.210(1)(2). It specifies that sixty days after additional taxes are fixed by the State Tax Commission (substitute "the Tax Tribunal"; see MCL 205.741; MSA 7.650[41]) they become delinquent if unpaid.

In summary, we believe that in creating the Tax Tribunal as a substitute for the Tax Commission regarding matters of assessment, the Legislature intended to treat interest due a taxpayer on overassessments in the same manner as interest due a taxing authority on underassessments. We further believe that the Legislature, in enacting the Tax Tribunal Act, recognized that ample authority already existed in the tax laws for the imposition of interest on taxes due an assessing authority where the level of assessment was determined in favor of the taxing authority.

Because we have raised a new issue not briefed or argued by the parties, i.e., the applicability of MCL 205.25(2); MSA 7.657(25)(2) and MCL 205.741; MSA 7.650(41), we conclude that it is necessary to remand this matter so that the issue can be briefed, argued, and decided in light of the foregoing discussion.

Respondent's last argument is that the tribunal erred in awarding interest pursuant to § 37(4) on the interest payment it ordered respondent to refund. We agree. Again, the plain language of this section reveals that interest is to be borne on the sum determined to have been unlawfully paid

and the judgment rendered in accordance with that determination. This sum represents, however, the unlawful payment of assessment *taxes,* not the unlawful payment of interest or other such penalty related to the tax assessment. Section 37(4), does not authorize an award of interest in this situation. We recognize that deference generally is afforded to the tribunal's interpretation of a statute it is delegated to administer. *Bechtel Power Corp v Dep't of Treasury,* 128 Mich App 324, 329; 340 NW2d 297 (1983). However, we conclude that the tribunal made an error of law in awarding interest pursuant to § 37(4) on the interest payment made by petitioner and ordered refunded.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.