GREAT WOLF LODGE OF TRAVERSE CITY, LLC
v PUBLIC SERVICE COMMISSION

Docket Nos. 281398 and 281404. Submitted July 7, 2009, at Lansing. Decided July 14, 2009, at 9:05 a.m.

Great Wolf Lodge of Traverse City, LLC, bought farmland with abandoned buildings on it as a site for its resort and water park. There was no electric service to the site, but there was an unused distribution line through which Cherryland Electric Cooperative had provided electric service in the past. Great Wolf contracted with Traverse City Light & Power (TCL&P), a municipal service not subject to regulation by the Public Service Commission (PSC), for electric service to the site. When Great Wolf asked Cherryland to remove the unused line, Cherryland, as a condition for removing the line, asked Great Wolf to state in writing that Cherryland would be the provider of electricity for the resort and water park. Fearing delays in construction, Great Wolf canceled its contract with TCL&P and entered into a three-year service agreement with Cherryland. Cherryland filed an application with the PSC for implementation of the large resort service (LRS) tariff for electric service to Great Wolf. The PSC denied the application, but allowed the LRS tariff for one year or until the parties could work out the terms of a special contract. While the LRS tariff was still in effect, Cherryland unilaterally increased the rate to the large commercial and industrial rate. Great Wolf filed a complaint with the PSC, seeking a return to the LRS rate, a refund of payments in excess of that rate, and a declaration that at the end of the parties' agreement, Great Wolf can choose a different provider of electricity. The PSC ordered a refund, but declined to impose a fine or interest on the refund amount. The PSC also declined the requested declaration, determining that under Mich Admin Code, R 460.3411 Great Wolf was an existing customer that cannot transfer from one utility to another and that Cherryland, as the first utility serving Great Wolf, is entitled to serve the entire electric load on Great Wolf's premises. Both parties appealed to the Ingham Circuit Court, which affirmed the PSC's determination under Rule 411 that Great Wolf was an existing Cherryland customer that cannot seek an alternative provider of electricity, affirmed the PSC refund order, but disagreed with the PSC's

decision not to impose a fine or add interest to the refund amount. Great Wolf and the PSC each applied for leave to appeal in the Court of Appeals, which granted the applications and consolidated the appeals.

The Court of Appeals *held*:

1. Rule 411 provides that existing customers shall not transfer from one utility to another. Mich Admin Code, R 460.3102(l) defines "utility" as an electric company, whether private, corporate, or cooperative, that operates under the jurisdiction of the PSC. In light of this definition of "utility," the transfer prohibition of Rule 411 applies to transfers from one utility regulated by the PSC to another similarly regulated utility. TCL&P is not subject to PSC regulation. Therefore, Rule 411 does not prevent Great Wolf's transfer to TCL&P.

2. Rule 411 defines "customer" as the buildings and facilities served, not the individual, association, partnership, or corporation served. Where service to buildings or facilities is interrupted, or buildings are demolished or facilities are removed, in direct connection with a change of ownership or land use, neither the service interruption nor the replacement of old buildings and facilities with new ones creates a new customer. However, some service interruption or elimination may end the utility-customer relationship. For example, if the previous owner held on to the site for a significant period after all land uses requiring electricity had been abandoned, requested that electric service be terminated, and demolished buildings or removed facilities, or at least allowed them to stand without electricity, for reasons other than anticipation of an immediate change of ownership or land use, then those actions should be deemed to have extinguished the previously existing customers on the site, thus severing the utility-customer relationship. The factual record in this case is limited, so a remand to the PSC is necessary for a full development of the record, findings, and conclusions regarding whether Great Wolf is an existing Cherryland customer that Cherryland is entitled to continue serving under Rule 411.

3. MCL 124.3(2) provides that a municipal corporation shall not render electric delivery service for heat, power, or light to customers outside its corporate limits already receiving the service from another utility unless the serving utility consents in writing. MCL 460.10y(2) guarantees certain rights of incumbency to municipally owned utilities and defines "customer" similarly to Rule 411 as the buildings or facilities served. The term "customer" has the same meaning under MCL 124.3(2) that it does under Rule 411. Under MCL 124.3(2), a complete change in the use of a parcel,

along with the demolition or removal of all existing buildings and facilities and their replacement with a new structure, brings about a change of customer. A remand to the PSC is required for a determination whether a customer was already receiving service, as contemplated by MCL 124.3(2), when Great Wolf acquired its property.

4. MCL 460.552 provides that no public utility supplying electricity shall put into force any rate or change for electricity without first petitioning the PSC for authority. MCL 460.558 provides that any corporation or person engaged in the business of furnishing electricity, or any officer, agent, or employee of such corporation or person who willfully or knowingly fails or neglects to obey or comply with a PSC order shall forfeit to the state of Michigan a sum not to exceed $300 for each offense. The circuit court correctly concluded that the PSC erred by failing to apply the forfeiture provisions of MCL 460.588 for Cherryland's negligence (or worse) in raising the rate charged to Great Wolf contrary to a lawful PSC order.

5. The circuit court correctly determined that the PSC erred by failing to award interest on the refund ordered. An award of interest is necessary to restore Great Wolf to its original condition.

6. The circuit court correctly decided that the PSC did not err by denying Great Wolf's motion for a rehearing on the asserted ground that additional provisions in the special contract needed to be addressed. Great Wolf failed to comply with the pleading requirements of Mich Admin Code, R 460.17505(d) with respect to the alleged additional provisions, and Great Wolf could not properly rely on its appendix to raise the additional claims.

Affirmed in part, vacated in part, and remanded to the PSC for further proceedings.

1. PUBLIC UTILITIES — ELECTRIC SERVICE — EXISTING CUSTOMERS — TRANSFERS FROM ONE UTILITY TO ANOTHER.

   An administrative rule prohibiting an existing electric customer from transferring from one utility to another applies only to transfers from one utility regulated by the Public Service Commission to another similarly regulated utility (Mich Admin Code, R 460.3102[1], R 460.3411[2]).

2. PUBLIC UTILITIES — ELECTRIC SERVICE — EXISTING CUSTOMERS.

   An administrative rule provides that the first electric utility serving a customer (which the rule defines as the buildings and facilities served, not the individual, association, partnership, or corporation served) is entitled to serve the entire load on the premises of the

customer, even if another utility is closer to a portion of the customer's load; where service to buildings or facilities is interrupted, or buildings are demolished or facilities removed, in direct connection with a change of ownership or land use, neither the service interruption nor the replacement of old buildings and facilities with new ones creates a new customer; however, some service interruption or elimination may end the utility-customer relationship; if, for example, the previous owner held on to the site for a significant period after all land uses requiring electricity had been abandoned, requested that electric service be terminated, and demolished buildings or removed facilities, or at least allowed them to stand without electricity, for reasons other than anticipation of an immediate change of ownership or land use, then those actions are deemed to have extinguished the previously existing customer on the site, thus severing the utility-customer relationship (Mich Admin Code, R 460.3411[1][a], [11]).

3. PUBLIC UTILITIES — ELECTRIC SERVICE — MUNICIPALLY OWNED UTILITIES.

A municipally owned electric utility is statutorily barred from delivering electricity to customers outside its corporate limits already receiving the service from another utility unless the serving utility consents in writing; for purposes of the statute, "customer" means the buildings or facilities served (MCL 124.3[2], 460.10y[2]).

*Clark Hill PLC* (by *Roderick S. Coy* and *Leland R. Rosier*) for Great Wolf Lodge of Traverse City, LLC.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *David A. Voges*, *Michael A. Nickerson*, and *Emmanuel B. Odunlami*, Assistant Attorneys General, for the Public Service Commission.

*Dykema Gossett PLLC* (by *Albert Ernst* and *Daniel J. Martin*) for Cherryland Electric Cooperative.

Before: METER, P.J., and MURRAY and BECKERING, JJ.

PER CURIAM. In Docket No. 281398, plaintiff, Great Wolf Lodge of Traverse City, LLC (Great Wolf), appeals by leave granted the circuit court's order affirming in part and reversing in part a decision of defendant Public Service

Commission (PSC). In particular, Great Wolf challenges the circuit court's affirmance of the PSC's decisions to (1) disallow Great Wolf from contracting for electric service from a utility other than defendant Cherryland Electric Cooperative (Cherryland), and (2) not conduct an evidentiary hearing in connection with other contract issues. In Docket No. 281404, the PSC appeals by leave granted the circuit court's order insofar as it reversed the PSC's decision not to impose a fine, or award interest, in connection with its determination that Cherryland had overcharged Great Wolf for electricity and that the latter was thus entitled to a refund. We affirm in part, vacate in part, and remand to the PSC for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

This case involves the provision of electricity to Great Wolf, a resort and water park in Traverse City, Michigan. Cherryland is an electric cooperative that is subject to regulation by the PSC and serves the Traverse City area. This case concerns whether Great Wolf must use Cherryland for electricity to its resort, or whether it is at liberty to contract with a competitor. Cherryland maintains that, because it had provided service to the property before Great Wolf acquired it, Great Wolf came to the property as an existing customer, thus entitling Cherryland to continue providing service under Mich Admin Code, R 460.3411 (Rule 411). That rule provides in pertinent part as follows:

(1) As used in this rule:

(a) "Customer" means the buildings and facilities served rather than the individual, association, partnership, or corporation served.

* * *

(2) Existing customers shall not transfer from one utility to another.

\* \* \*

(11) The first utility serving a customer pursuant to these rules is entitled to serve the entire electric load on the premises of that customer even if another utility is closer to a portion of the customer's load.

Great Wolf built its resort on 48 acres of what was once farmland, to which Cherryland had provided electricity. At the time Great Wolf purchased the land, some abandoned buildings remained. None had electric service, but an unused Cherryland distribution line (or service drop) remained on the property. Great Wolf solicited bids for electric service to the resort and then contracted with Traverse City Light & Power (TCL&P), a municipal provider not regulated by the PSC, for that purpose.

When construction of the resort began, Great Wolf found that it could not raze the abandoned farm buildings and begin construction until Cherryland removed its unused distribution line. Cherryland informed Great Wolf that it would remove the line if Great Wolf stated in writing that the removal was necessary for the demolition of the existing farm buildings and that Cherryland would be the electricity provider for the resort. Fearing delays in construction, Great Wolf terminated its contract with TCL&P and agreed to accept electric service from Cherryland under a special, three-year customer service agreement.

In the course of performing under that contract, Cherryland filed an application with the PSC seeking to implement the large resort service (LRS) tariff for electric service to Great Wolf. The PSC denied the request on the grounds that Great Wolf was the only customer eligible for the LRS rate and it would be

imprudent to approve a generally available LRS tariff on the basis of the incremental costs of serving a single customer. However, to preserve the status quo until the parties worked out the terms of a special contract, the PSC's order denying Cherryland's application nonetheless approved the LRS rate for one year, or until the effective date of a special contract, whichever came first.

During the period for which the LRS rate had been approved, however, Cherryland unilaterally increased the rate to its large commercial and industrial (LCI) rate. Great Wolf responded with a two-count complaint filed with the PSC. Count I sought a refund for the alleged overcharge, asked the PSC to fine Cherryland for violating its order specifying the LRS rate, and requested a return to that rate. Count II sought a declaration that at the end of the present agreement, Great Wolf would be free to choose a different electricity provider.

Cherryland moved for summary disposition on the grounds that it had switched Great Wolf to the LCI rate because Great Wolf did not meet the minimum load requirement for the LRS rate and Cherryland wished to avoid being fined for charging an unauthorized rate, and that Rule 411 precluded Great Wolf from receiving electric service from any other provider.

The PSC ruled in favor of Great Wolf on Count I, and accordingly ordered Cherryland to refund $72,550.16, but declined to impose a fine, or interest on the award, on the ground that Cherryland's interpretation of its duties, though erroneous, had not been unreasonable. The PSC refused Great Wolf's request for the option of choosing an alternative provider of electricity, declaring that Great Wolf was an existing customer of Cherryland because the previous owner of the property used Cherryland's service.

Great Wolf moved for a rehearing, arguing that additional provisions in the special contract needed to be addressed. The PSC denied the motion and declined to hold an evidentiary hearing on the ground that Great Wolf had not raised any such other issues in its complaint.

Both parties appealed to the circuit court, which agreed that Cherryland was liable for a refund of its overcharges to Great Wolf, but disagreed with the PSC's decision not to impose a fine or add interest to the refund amount. The circuit court affirmed the PSC's application of Rule 411, and thus its conclusion that Great Wolf was an existing customer of Cherryland and therefore not entitled to seek electric service elsewhere. The circuit court additionally agreed with the PSC that Great Wolf had not pleaded any other issues pertaining to the special contract for which a hearing should be held.

Great Wolf sought leave to appeal the circuit court's order affirming the PSC's decision under Rule 411. The PSC sought leave to appeal the reversal of its decision not to impose a fine against Cherryland or award interest to Great Wolf. This Court granted leave in connection with both applications, then consolidated the appeals for a decision on appeal.

## II. STANDARDS OF REVIEW

A final order of the PSC must be authorized by law and supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; *In re Application of Consumers Energy Co*, 279 Mich App 180, 188; 756 NW2d 253 (2008). " 'A party aggrieved by an order of the PSC has the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. MCL 462.26(8).' " *Id.* (citation omitted).

To establish that a PSC order is unlawful, the appellant must show that the PSC failed to follow a statutory requirement or abused its discretion in the exercise of its judgment. *In re MCI Telecom Complaint*, 460 Mich 396, 427; 596 NW2d 164 (1999). A reviewing court gives due deference to the PSC's administrative expertise and should not substitute its judgment for that of the PSC. *Attorney General v Pub Service Comm No 2*, 237 Mich App 82, 88; 602 NW2d 225 (1999).

Issues of statutory interpretation are reviewed de novo. *In re Complaint of Rovas Against SBC Michigan*, 482 Mich 90, 102; 754 NW2d 259 (2008). A reviewing court should give an administrative agency's interpretation of statutes it is obliged to execute respectful consideration, but not deference. *Id.* at 108. "Principles of statutory interpretation apply to the construction of administrative rules." *City of Romulus v Dep't of Environmental Quality*, 260 Mich App 54, 65; 678 NW2d 444 (2003).

### III. CHOICE OF ELECTRICITY PROVIDER

#### A. UTILITY OR MUNICIPAL PROVIDER

The PSC and Cherryland rely on *In re Complaint of Consumers Energy Co*, 255 Mich App 496; 660 NW2d 785 (2003), in which this Court recited that, for purposes of utilities providing electricity, the "customer" is the buildings and facilities served, and held that the combination of a change of ownership and demolition of all buildings served did not create a new customer. *Id.* at 502-503, citing Rule 411.

Great Wolf attempts to distinguish *In re Complaint of Consumers Energy* on the ground that the case concerned a dispute over which of two utilities would provide electricity, while this case concerned one regu-

lated utility, Cherryland, and a municipal provider not subject to the PSC's regulation, TCL&P. *Id.* at 497. Great Wolf argues that the latter does not constitute a "utility" for purposes of the prohibition in Rule 411(2) against transferring service "from one utility to another" because Mich Admin Code, R 460.3102(l) (Rule 102[l]) defines "utility" as "an electric company, whether private, corporate, or cooperative, that operates under the jurisdiction of the commission," thus causing TCL&P, as a municipal provider not regulated by the PSC, to fall outside that definition. See MCL 460.6(1) ("The [PSC] is vested with complete power and jurisdiction to regulate all public utilities in the state except a municipally owned utility, . . . and except as otherwise restricted by law."); MCL 460.10y(11) ("[T]he commission does not have jurisdiction over a municipally owned utility."). Rule 411 does not define the term "utility."

The PSC accepted the argument that, insofar as Great Wolf was seeking to contract with TCL&P, Rule 411 is not directly applicable because that rule "does not purport to alter the rights or obligations of a non-jurisdictional utility." However, the circuit court in turn held that it "need not address what a utility is in the context of Rule 411(2) of the administrative code since subrule 11 clearly sets forth Cherryland's entitlement." We conclude that the circuit court interpreted that subrule in connection with Cherryland too generously.

Again, Rule 411(11) states: "The first utility serving a customer pursuant to these rules is entitled to serve the entire electric load on the premises of that customer even if another utility is closer to a portion of the customer's load." The circuit court erred in treating this subrule as establishing an incumbent utility's

rights against competition from apparently any alternative provider, as opposed to just PSC-regulated utilities as defined.

Rule 411(11) concerns extensions of service on premises already being served, and guards against any single premises being served by multiple utilities. Rule 411(11) joins Rule 411(2) in envisioning only other *utilities*—thus, utilities as defined—as the potential competition from which an incumbent provider is entitled to protection. The announcement in Rule 411(11) of its applicability "even if another utility is closer to a portion of the customer's load" indicates that competition from "another utility" is what is being guarded against; otherwise that language would be mere surplusage. See *Tiger Stadium Fan Club, Inc v Governor*, 217 Mich App 439, 457; 553 NW2d 7 (1996) (stating that a construction rendering some statutory language nugatory or surplusage should be avoided). Rule 411(11) thus does not obviate the need to decide whether Rule 411(2) applies where the competing entity is a municipal service not regulated by the PSC.

"[W]here a statute or court rule provides its own definition of a term, the term must be applied in conformity with that definition." *McAuley v Gen Motors Corp*, 457 Mich 513, 524; 578 NW2d 282 (1998). Likewise, when a term is defined in an administrative rule, that definition must carry through. See *City of Romulus*. Fidelity to that fundamental principle of construction inveighs against broadening the definition of "utility" for purposes of Rule 411 to cover an entity that does not satisfy the definition of that term as set forth in Rule 102(l). Because the regulatory scheme at issue includes a detailed definition of "utility," which excludes such municipal providers as Great Wolf's choice for its own needs, TCL&P, and Rules 411(2) and 411(11)

impose limitations on only utilities as defined, neither Rule 411(2) nor Rule 411(11) prevents Great Wolf from contracting with TCL&P for its electrical needs.

However, Great Wolf does not seek a declaration that it might contract with a municipal provider for electricity, but instead requests a declaration that it is free to deal with any provider for its electrical needs. Great Wolf thus is not agreeing to constrain its choice of an alternative for Cherryland to TCL&P, but instead may wish to consider another PSC-regulated utility if given the chance to do so.[1] Accordingly, in light of Great Wolf's broad request for declaratory relief, the question whether Great Wolf came to this situation as a new customer, thus entitled to choose from any available electricity provider, must be answered.

### B. PSC-REGULATED UTILITY: EXISTING CUSTOMER

Although Great Wolf has been accepting service from Cherryland, it has consistently done so under protest, citing business imperatives while asserting its prerogative to contract with another source for electricity. Neither the PSC nor Cherryland has suggested that Great Wolf's assertion of its right to choose a provider has been supplanted by its having accepted service from Cherryland as it has. For these reasons, we will review the question whether Great Wolf stepped into the shoes of an existing customer of Cherryland when it initially acquired the property and contracted with TCL&P, then agreed to a temporary arrangement with Cherryland for electricity.

---

[1] The circuit court reported that Consumers Energy joined Cherryland and TCL&P as providers of electricity serving the area, and so presumably that PSC-regulated entity is a contender for Great Wolf's business if Great Wolf obtains the declaration it seeks.

In *In re Complaint of Consumers Energy, supra* at 502-503, this Court held that for purposes of Rule 411, a change of ownership and demolition of all buildings served did not create a new customer. Apparently influencing this Court's decision was that the new owner of the premises at issue had endeavored to time its purchases of the pertinent parcels to avoid a finding that "the discontinuation of service was directly related to the change in ownership." *Id.* at 503. This leaves open the possibility that a discontinuation of service, and demolition of buildings, coming about for reasons other than direct furtherance of a plan to change ownership or land uses, can indeed extinguish an existing customer.

The PSC and Cherryland suggest that *In re Complaint of Consumers Energy* stands for the proposition that an electric utility's customer is the *parcel of land* served, such that, once service to a parcel is established, as long as the utility keeps a live distribution line in the vicinity and stands prepared to resume service, no period of interruption in service, and no degree of destruction of the actual buildings or removal of facilities served extinguishes the utility-customer relationship. The circuit court agreed, stating that "the Court of Appeals . . . conclude[d] that the customer was the premises served by Consumers." The Court of Appeals did, in fact, state that "the . . . *property* is an existing customer" and that the new owner's "purchases of the three parcels did not give it the right to change to a new utility because the *property* had always been an existing customer of Consumers." *Id.* at 502-503 (emphasis added). Although those statements, in isolation, could be read to indicate that this Court equated the term "customer" with the parcel served, we conclude that they need not, and should not, be so interpreted.

If Rule 411(1)(a) calls for carefully distinguishing between individuals, associations, partnerships, or corporations taking service from the buildings and facilities served, with only the latter two constituting a "customer," it also demands distinguishing buildings and facilities served from the parcels served. The rule providing the definition could easily have stated that the customer was the parcel, but instead specified buildings and facilities. It follows, then, that where there are no buildings or facilities being served, there is no customer.

The statements from *In re Complaint of Consumers Energy* giving rise to the suggestion that this Court equated the terms "customer" and "parcel" came about in the context of distinguishing buildings and facilities served from the property owner taking service, and discussing the provision in Rule 411(11) for "the first utility's entitlement to serve the entire electric load." In light of that, this Court's statements referred simply to property upon which an existing customer stood, such that extensions of service upon the property should be the business of the incumbent utility. Even when viewed in isolation, the statements do not suggest that the question of equating "customer," for purposes of identifying an existing one, with the "parcel" served was raised or decided. To take the Court's references to "property" to indicate that the parcel, apart from its buildings and facilities, was itself the "customer" is to misread the statements.

Instead, we read *In re Complaint of Consumers Energy* as indicating that where service to buildings or facilities is interrupted, or buildings are demolished or facilities are removed, in direct connection with a change of ownership or land use, neither the service interruption nor the replacement of old buildings and

facilities with new ones creates a new customer. To avoid interpreting that case, or the definition of "existing customer," as locking an incumbent utility into that status for a given parcel in perpetuity if it so chooses, with no regard for periods of interruption in service or elimination of buildings and facilities, it is necessary to recognize that some such interruption or elimination would indeed work an end to the utility-customer relationship.

The question then remains whether, under these facts, there were buildings or facilities on the site in question that qualified as "existing customers" of Cherryland when Great Wolf acquired the site. If the changes in buildings and facilities and interruption of service came about in reasonable proximity to and for the purpose of a change in ownership and plan for the site, then under *In re Complaint of Consumers Energy*, those changes and that interruption did not create a new customer. If, however, the previous owner held on to the site for a significant period after all land uses requiring electricity had been abandoned, requested that electric service be terminated, and demolished buildings or removed facilities, or at least allowed them to stand without electricity, for reasons other than anticipation of an immediate change of ownership or land use, then those actions should be deemed to have extinguished the previously existing customer or customers on the site, thus severing the utility-customer relationship.[2]

However, it does not appear that the pertinent determinations can be made from the existing record. The

---

[2] In the latter event, if indeed any remaining buildings still stood only because of Cherryland's refusal to honor a request to remove its distribution line, Cherryland's obstinacy should not be equated with a continuation of service to those buildings.

question of Cherryland's entitlement to continue to serve the subject site was decided below on a motion for summary disposition, thus leaving a limited factual record. We therefore vacate the PSC's holding, and the circuit court's affirmance, that Cherryland is entitled to continue serving Great Wolf; clarify that for purposes of Rule 411, "customer" means buildings and facilities, not the land on which they once stood; declare that a significant interruption of service to buildings or facilities can extinguish the existence of an existing customer in some situations; and remand this case to the PSC for full factual development, findings, and conclusions in this regard.

### C. MUNICIPAL PROVIDER: CUSTOMER ALREADY RECEIVING SERVICE

As discussed earlier, and as the PSC noted, to the extent that Great Wolf envisions TCL&P as its alternative to Cherryland because it is a municipal provider not subject to PSC regulation, TCL&P does not fit the definition of "utility" for purposes of Rule 411, and so the strictures of that rule do not come to bear.

An authority that does act as a limitation on municipal providers such as TCL&P is MCL 124.3(2), which states, "A municipal corporation shall not render electric delivery service for heat, power, or light to customers outside its corporate limits already receiving the service from another utility unless the serving utility consents in writing." The question then is not whether the site at issue constitutes an "existing customer" for purposes of Rule 411, but whether the facts of this case present a "customer[] . . . already receiving [electric] service" from Cherryland.

MCL 460.10y(2) guarantees certain rights of incumbency to municipally owned utilities. Because TCL&P

has no incumbency under the instant facts, that statue is not directly applicable. However, it includes the following provision: "For purposes of this subsection, 'customer' means the building or facilities served rather than the individual, association, partnership, corporation, governmental body, or any other entity taking service." MCL 460.10y(2) thus adopts a definition of "customer" mirroring that of Rule 411(1)(a), but announces that this definition applies only to that subsection. We must therefore decide whether to apply the definition of "customer" as set forth in Rule 411(1)(a) and MCL 460.10y(2), which do not apply in connection with TCL&P, to MCL 124.3(2), which does.

Cherryland points out that MCL 124.3 was amended in 2000, after the promulgation of Rule 411 and the effective date of MCL 460.10y. See 2000 PA 141 and 155. "[T]he Legislature is presumed to be aware of, and thus to have considered the effect on, all existing statutes when enacting new laws." *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993). That principle suggests that if the Legislature was aware of the definition of "customer" set forth in MCL 460.10y(2) when it recast MCL 124.3 in 2000, it was also aware that MCL 460.10y(2) announced no broader application of that definition than to itself.

However, that the definition set forth in MCL 460.10y(2) perfectly mirrors the one set forth in Rule 411(1)(a) indicates a legislative preference that the meaning of "customer" for purposes of Rule 411 carry over to related statutes. We accordingly treat as instructive the definition of "customer" set forth in Rule 411 and MCL 460.10y(2), and adopt it for purposes of MCL 124.3(2). Statutes that have a common purpose should be read in harmony with each other in furtherance of that purpose. *Jennings v Southwood*, 446 Mich 125,

136-137; 521 NW2d 230 (1994). The goal of harmonization is obviously better served with a uniform definition of "customer" in these related authorities.

The relevant inquiry is whether, under these facts, there were buildings or facilities on the site in question that were "already receiving" electric service from Cherryland at the time Great Wolf came to the site and sought service from TCL&P. The inquiry thus shifts from determining whether there was an "existing customer," as would be appropriate for a Rule 411 analysis, to determining whether a customer was "already receiving" service.

*In re Complaint of Consumers Energy* is instructive, although it concerned a situation where one PSC-regulated utility was to be replaced with another and it construed "existing customer" for purposes of Rule 411. As noted, this case involves replacing a PSC-regulated utility with a municipal one and the construction of the phrase "customer already receiving service" under MCL 124.3(2).

Great Wolf relies on a circuit court case involving facts similar to those of the instant case, including parties with an interest in the instant case's outcome, *Cherryland Electric Coop v Traverse City Light & Power*, Grand Traverse Circuit Court Case No. 01-21871-CZ (2002). In that case, Gordon Food Service purchased a parcel that had earlier been served by Cherryland, asked Cherryland to discontinue service, demolished all the existing buildings, erected a store, and contracted with TCL&P for its electricity. The circuit court held that under MCL 124.3(2), a "complete change in use" of the parcel, along with the demolition or removal of all existing buildings and facilities and their replacement with a new structure, brings about a change of customer. The court added, "Gordon Food

Service never received electric service from Cherryland merely by acquiring this property at which Cherryland was serving prior to that acquisition." The PSC and Cherryland, of course, remind this Court that it is not bound by the pronouncements of the circuit court. But the reasoning in that case remains persuasive.

The phrase "customers already receiving service" in MCL 124.3(2) describes something different than "existing customers" in Rule 411(2). "Existing customer" describes a customer with a certain status, whereas "customer already receiving service" describes a customer actively engaged in certain commerce. A customer may more logically retain the status of "existing" over an interruption in service than may a customer deemed to be "receiving service." The questions in this case then are why the interruption of service from Cherryland on the subject parcel came about, why the buildings or the facilities on the parcel were abandoned, demolished, or removed, and how long were the buildings or facilities not actually receiving service from Cherryland.

If the changes and interruption came about in reasonable proximity to, and for the purpose of, a change in ownership and plan for the site, then a choice must be made between the examples of *In re Complaint of Consumers Energy* (adopting Rule 411 analysis for present purposes), and the circuit court case of *Cherryland Electric Coop* (applying MCL 124.3). We adopt the latter example, bearing in mind that it was not supplanted by this Court's superior authority in *In re Complaint of Consumers Energy* because the two cases invoked different authorities in relation to substantially different facts.

However, at issue for purposes of application of MCL 124.3 are the same facts that need to be considered

when deciding whether there was an existing customer for purposes of Rule 411. And the same problem arises—i.e., the lack of a full evidentiary record below. The PSC's fact-finding mission on remand should include determining whether a "customer" was "already receiving service" when Great Wolf acquired the property. In making this determination, the PSC is to bear in mind that, to the extent that Great Wolf wishes to do business with TCL&P, the operative authority is MCL 124.3, not Rule 411, but that "customer" for that purpose adopts the definition set forth in Rule 411(1)(a) and MCL 460.10y(2), and that "existing customer" need not mean the same as "customer already receiving service."

### IV. FINE AND INTEREST

#### A. FORFEITURE (FINE)

MCL 460.552 provides:

> The Michigan public utilities commission, hereinafter referred to as "the commission" shall have control and supervision of the business of transmitting and supplying electricity as mentioned in the first section of this act and no public utility supplying electricity shall put into force any rate or charge for the same without first petitioning said commission for authority to initiate or put into force such rate or charge and securing the affirmative action of the commission approving said rate or charge.

The Public Utilities Commission was subsequently abolished, and its duties transferred to the PSC.

MCL 460.558, in turn, provides:

> Every corporation, its officers, agents and employes, and all persons and firms engaged in the business of furnishing electricity as aforesaid shall obey and comply with every lawful order made by the commission under the authority of this act so long as the same shall remain in force. Any

corporation or person engaged in such business or any officer, agent, or employe thereof, who wilfully or knowingly fails or neglects to obey or comply with such order or any provision of this act shall forfeit to the state of Michigan not to exceed the sum of 300 dollars for each offense. Every distinct violation of any such order or of this act, shall be a separate offense, and in case of a continued violation, each day shall be deemed a separate offense. An action to recover such forfeiture may be brought in any court of competent jurisdiction in this state in the name of the people of the state of Michigan, and all moneys recovered in any such action, together with the costs thereof, shall be paid into the state treasury to the credit of the general fund.

Those two statutes operate together to establish that electric utilities must confine themselves to charging approved rates, and that violations of that duty "shall" result in penalties within the range prescribed. "The term 'shall' denotes a mandatory rather than a discretionary course of action." *Liggett Restaurant Group, Inc v City of Pontiac*, 260 Mich App 127, 138; 676 NW2d 633 (2003).

Because MCL 460.558 states that a utility "who wilfully or knowingly fails or neglects to obey or comply with [a PSC] order . . . shall forfeit to the state of Michigan not to exceed the sum of [$300] for each offense," the PSC's order requiring that Cherryland refund certain unauthorized overcharges to Great Wolf without adding any forfeiture provision was unlawful if Cherryland in fact wilfully or knowingly failed or neglected to obey or otherwise comply with a PSC order.

The circuit court noted that "the Commissions' July 22, 2004 Opinion and Order specifically stated that the status quo between the parties was to be maintained for at least a year," but that, even so, "Cherryland decided to unilaterally change the ordered rate." The court further noted that the PSC itself had stated that

Cherryland should have sought clarification if it had any reservations about continuing to charge the ordered rate in light of Great Wolf's rates of consumption.

The PSC and Cherryland argue that the circuit court improperly substituted its judgment for that of the PSC by independently concluding that Cherryland's behavior in this regard was sufficiently egregious to trigger the forfeiture provision of MCL 460.558. However, the court in fact referred, and thus properly deferred, to the PSC's own determination that Cherryland should have sought clarification rather than unilaterally departing from the terms of an order still in operation. The statutory forfeiture provision does not come to bear only in response to a wilful or knowing failure to comply with a lawful PSC order; it also applies in the event of negligent noncompliance. In identifying Cherryland's proper remedy if it really had concerns about the rate it charged Great Wolf—i.e., seeking clarification—and Cherryland's failure to resort to that obvious avenue of ensuring it was performing as required, the PSC itself provided factual findings setting forth an episode of negligence at best, thus calling for imposition of a statutory fine. The PSC's decision to overlook that negligence (or worse) by not imposing a fine was thus unlawful as a violation of its statutory duty in the matter, as the circuit court declared.

For these reasons, we affirm the circuit court's determination that the PSC erred by failing to apply the forfeiture provisions of MCL 460.558.

### B. INTEREST

The PSC declined to award interest on the refund it ordered Cherryland to issue to Great Wolf, apparently treating interest as some kind of penalty it thought was not deserved. The circuit court in turn cited caselaw for

the proposition that the PSC is authorized to award interest on customer refunds, and concluded that its failure to do so in this instance was error. See *Detroit Edison Co v Pub Service Comm*, 155 Mich App 461, 469; 400 NW2d 644 (1986).

Cherryland argues that the interest-free refund awarded to Great Wolf "itself shielded [Great Wolf] from paying the 'higher' appropriate rate for not meeting the LRS rate conditions." However, interest is not a penalty, but rather part of the judgment, compensating the person owed for the lost time-value of the money during the course of the dispute. See *Xerox Corp v Oakland Co*, 191 Mich App 433, 441; 478 NW2d 702 (1991). Accordingly, an award of interest on top of the nominal dollars found to have been overpaid is necessary to restore Great Wolf to its original condition. See *Detroit Edison*, *supra* at 470 ("a guarantee of a refund *with interest* protects the customers of a utility" [emphasis added]).

For these reasons, we affirm the circuit court's determination that the PSC erred by failing to include interest with the refund that Cherryland must pay Great Wolf.

## V. REQUEST FOR EVIDENTIARY HEARING

In the course of denying a motion for rehearing, the PSC rejected the argument that there should be a remand for a hearing on other disputed provisions in the special contract. The PSC stated, "While [Great Wolf] did submit a redline copy of the proposed special contract that included changes unrelated to the issue of transmission and distribution services, [Great Wolf] made no mention of these additional issues in its pleading," and then concluded that Great Wolf's advocacy in this regard did not comport with the applicable pleading requirements.

The circuit court agreed, stating:

> The Court dispenses with this claim for the simple fact that certain issues were never raised in the complaint . . . [which] only referenced the disputed provision that [Great Wolf] was to continue receiving transmission and distribution services solely from Cherryland. While the Court recognizes that a so-called "red lined" copy of the special contract was attached to the complaint, no specific mention of any other disputed provision was disclosed in the body of the pleading. Nor were any additional claims averred.

Great Wolf admits that its complaint did not set forth issues beyond those concerning choice of electricity provider, and does not dispute that its prayer for relief made no mention of the sundry additional issues it wished to litigate, but argues that those additional issues were presented, and clearly indicated, by attachment of a copy of its proposed contract as marked up by Cherryland in response. But Great Wolf cites no authority for the proposition that the PSC, or a party opponent, is obliged to look for signs of matters in dispute in an appendix, and from that identify specific issues for litigation and determination.

According to the administrative rules, a formal complaint filed with the PSC must set forth "the specific allegations necessary to reasonably inform the respondent of the nature of the claims the respondent is called upon to defend, with specific reference where practicable to the section or sections of all statutes, rules, regulations, orders, and tariffs upon which the complainant relies . . . ." Mich Admin Code, R 460.17505(d). Rule 505(f) in turn demands a "clear and concise statement of the relief sought and the authority upon which the complaint relies . . . ." In light of these precise pleading requirements, Great Wolf could not expect the PSC to allow Great Wolf to select and develop issues

from the grab bag of potential issues signaled by a marked-up copy of a proposed contract.

For these reasons, we reject this claim of error.

### VI. CONCLUSION

We vacate the determination that Cherryland is entitled to continue serving Great Wolf's resort and remand this case to the PSC for determination of that question anew upon development of a full factual record and as otherwise guided by this opinion.

We reiterate that, for purposes of Rule 411(1)(a), "customer" does not mean the land or premises served, but, as the rule indicates, means the buildings and facilities served, and that a significant interruption of service to buildings and facilities, which is not directly related to a change in ownership or site plan, can indeed extinguish the utility-customer relationship. We additionally clarify that Rule 411 applies to the extent that Great Wolf seeks a declaration that it is free to contract with any provider for electricity, which may include a PSC-regulated utility, but that MCL 124.3(2) applies to the extent that Great Wolf seeks to contract with a municipal provider of that service. Further, "customer" for purposes of the latter rule means the buildings and facilities served, by extension of the definition in Rule 411(1)(a) and MCL 460.10y(2).

In all other regards, we affirm the circuit court, including its determination that Cherryland should be assessed a fine and required to pay interest on the refund to Great Wolf.

Affirmed in part, vacated in part, and remanded to the PSC for further proceedings consistent with this opinion. We do not retain jurisdiction.