*In re* COMPLAINT OF CONSUMERS ENERGY COMPANY

Docket No. 232421. Submitted October 2, 2002, at Lansing. Decided November 12, 2002; Approved for publication February 28, 2003, at 9:00 A.M. Leave to appeal denied, 468 Mich ___.

Consumers Energy Company filed a complaint with the Public Service Commission (PSC), alleging that Great Lakes Energy Cooperative violated 1983 AACS, R 460.3411 (rule 411) by providing electric service to property owned by Meijer, Inc. Consumers alleged that the property was an existing customer under rule 411(11) and that Consumers was entitled to service the property. A hearing referee's proposal for decision agreed with Consumers, but the PSC found that Meijer was not an existing customer of Consumers, but was a prospective customer, and that Great Lakes was the closest utility and entitled to provide the electric service. Consumers appealed.

The Court of Appeals *held*:

The decision of the PSC was based on an erroneous interpretation and application of rule 411. The order of the PSC is unlawful and must be reversed.

1. Rule 411(2) provides that existing customers may not transfer from one utility to another. Rule 411(11) provides that the first utility serving a customer is entitled to serve the entire electric load on the premises to the customer, even if another utility is closer to a portion of the customer's load. Consumers was the first utility serving the property involved in this dispute.

2. Rule 411(1)(a) defines "customer" as the buildings and facilities served, not the individual, association, partnership, or corporation taking service. The property owned by Meijer is an existing customer to which Consumers is entitled to provide electric service.

Reversed.

*Raymond E. McQuillan* for Consumers Energy Company.

*Dykema Gossett PLLC* (by *Albert Ernst* and *Christine Mason Soneral*) for Great Lakes Energy Cooperative and Meijer, Inc.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *David A. Voges* and *Larry G. Watterworth*, Assistant Attorneys General, for the Public Service Commission.

Before: COOPER, P.J., and JANSEN and R. J. DANHOF*, JJ.

PER CURIAM. Appellant Consumers Energy Company appeals as of right from an order of the Michigan Public Service Commission (PSC) dismissing its complaint regarding Consumers' entitlement to provide electric service to property acquired by intervening appellee Meijer, Inc. We reverse.

The dispute in this case centers on which utility, Consumers or appellee Great Lakes Energy Cooperative, is entitled to provide electric service to property owned by Meijer. The property is located in Amber Township in Mason County. The property began as an eighty-acre farm owned by Nels Nelson Lund and Serene Lund, as husband and wife. In the early 1960s, the land essentially was divided into two distinct parcels: forty acres in the northern part and forty acres in the southern part. In 1962, the Lunds conveyed fifteen acres of the southern portion to their son and his wife, Nels Nelson Lund, Jr., and Marjorie Ann Lund. In 1971, the Lunds conveyed 23.7 additional acres in the southern portion also to Nels, Jr., and Marjorie, retaining only 1.3 acres for themselves. In

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

1963, the Lunds conveyed the forty-acre northern portion to their son Jack. Great Lakes (and its predecessor) provided electric service to the northern parcel from November 1966 until March 1980 when the house thereon was demolished and the meter was retired. This northern parcel, however, is not part of the property at issue in this case.

In 1990, Nels, Jr., and Marjorie sold ten of their 38.7 acres to FHPPSY Partners. In 1995, Nels and Serene Lund sold their remaining 1.3 acres, which contained the Lunds' house, barn, and other outbuildings, to Finishing Touch Kitchens. In 1999, Meijer purchased the entire forty acres, but not all in one sale. There were three parcels: (1) ten acres owned by FHPPSY Partners, (2) 28.7 acres owned by Nels, Jr., and Marjorie Lund, and (3) 1.3 acres owned by Finishing Touch Kitchens. On August 11, 1999, Meijer purchased the property from Nels, Jr., and Marjorie Lund. On August 16, 1999, Meijer purchased the property from FHPPSY Partners. Meijer purchased the third parcel from Finishing Touch Kitchens on August 17, 1999.

Consumers began servicing the entire Lund property in the 1940s. With respect to the southern parcel, Consumers provided electric service to a house on the first parcel from 1981 until the house was demolished and service was discontinued in 1992. Consumers provided electric service to the second parcel to a lighted sign from 1976 until the sign was removed in 1994. Consumers also provided electric service to the third parcel until November 1999.

In mid-1999, Meijer conducted several meetings with local utilities, economic development committees, and building authorities regarding the construc-

tion of a store and gas station on the southern parcel. As stated, Meijer ultimately purchased all three parcels in separate sales in August 1999. On August 16, 1999, Meijer requested electric service from Great Lakes for the first and second parcels. The third parcel, purchased from Finishing Touch Kitchens, continued to be served by Consumers until November 1999, when a Meijer contractor removed the Lund house, barn, and outbuildings. Great Lakes then serviced Meijer with temporary single-phase electric service on the third parcel for construction purposes on November 18, 1999. The service was converted to three-phase service on December 9, 1999, and permanent three-phase metered service was started by Great Lakes on May 1, 2000.

On February 8, 2000, Consumers filed a formal complaint against Great Lakes, alleging that Great Lakes violated 1983 AACS, R 460.3411 (hereafter referred to as Rule 411) by providing permanent three-phase metered service to Meijer. Consumers contended that because it had continuously serviced the three parcels and never relinquished or abandoned its entitlement to do so, it was the first utility with respect to the property and was entitled to service the electric load to Meijer. Consumers contended, as it does on appeal, that Meijer is an existing customer under Rule 411(11) and that Consumers is therefore entitled to service the three parcels now owned by Meijer because it had historically serviced the property.

A prehearing conference was held before a hearing referee on May 11, 2000. After evidentiary hearings were conducted and briefs filed, the hearing referee issued her proposal for decision on September 11,

2000. The hearing referee concluded that Great Lakes violated Rule 411 because Meijer was an "existing customer" as that term is defined by the administrative rule. The hearing referee recommended that the PSC find that Consumers was entitled to serve Meijer and that Great Lakes had violated Rule 411.

Great Lakes filed exceptions to the proposal for decision, and the PSC, in a two-to-one decision, did not adopt the proposal for decision. Instead, the PSC found that Meijer was not an existing customer of Consumers, but was a prospective customer. The PSC also found that Great Lakes' three-phase facilities were not merely "stub lines."[1] Rather, the PSC ruled that the three-phase facilities were designed and constructed to serve a useful purpose and could be used for measurement purposes. The PSC found that the evidence showed that Great Lakes' three-phase line was ninety-three feet from Meijer's primary meter location, while Consumers' closest line was 1,264 feet from the meter location, and that the closest utility was entitled to provide electric service. Consumers now appeals from the PSC's decision, arguing that the PSC erred in determining that Meijer was a prospective customer rather than an existing customer.

MCL 462.25 provides that all rates, fares, charges, classification and joint rates fixed by the PSC and all regulations, practices, and services prescribed by the PSC are prima facie lawful and reasonable. MCL 462.26(8) provides that in all appeals the burden of proof is on the appellant to show by clear and satisfactory evidence that the order of the PSC is unlawful

---

[1] A stub line is a dead-end extension of a facility constructed for no useful purpose other than the presence of an electrical utility for future measurement purposes.

or unreasonable. An order of the PSC is unlawful if it is based on an erroneous interpretation or application of the law, and an order is unreasonable if it is not supported by the evidence. *Residential Ratepayer Consortium v Pub Service Comm*, 239 Mich App 1, 3; 607 NW2d 391 (1999).

This case is controlled by the interpretation and application of Rule 411, which provides in pertinent part:

> (1) As used in this rule:
> (a) "Customer" means the buildings and facilities served rather than the individual, association, partnership, or corporation taking service.
>
> \* \* \*
>
> (2) Existing customers shall not transfer from one utility to another.
>
> \* \* \*
>
> (11) The first utility serving a customer pursuant to these rules is entitled to serve the entire electric load on the premises of that customer even though another utility is closer to a portion of the customer's load.

We agree with the dissenting commissioner that the majority ignored the clear language of the administrative rule to foster customer choice. We conclude that the PSC's decision is based on an erroneous interpretation and application of the administrative rule and is therefore unlawful.

In the present case, the undisputed evidence shows that Consumers first began to provide electric service to the Lund property in the 1940s. When the southern portion was ultimately divided into three parcels, Consumers continued to provide electric service. Rule

411(2) clearly provides that existing customers shall not transfer from one utility to another. Further, Rule 411(11) also dictates that the first utility, which is clearly Consumers, serving a customer is entitled to serve the entire electric load on the premises to the customer even if another utility is closer to a portion of the customer's load.

Moreover, the evidence shows that the Meijer property is an existing customer as that term is defined in the rule. Rule 411(1)(a) defines "customer" as the buildings and facilities served, rather than the individual, association, partnership, or corporation taking service. Therefore, a change in ownership does not allow the new owner to be considered a prospective customer for purposes of customer choice.[2] Here, Consumers was the first and only utility to provide electric service to the three parcels. Consumers provided electric service to the first parcel until 1992, when the house was demolished; the second parcel until 1994, when a sign was removed; and the third parcel until November 1999, after the parcel was purchased by Meijer. The fact that electric service to two of the parcels was discontinued for a period is of no consequence under the administrative rules. Consumers continued to maintain three-phase energized facilities on the southern edge of the parcels and the electric service was discontinued at the request of the property owners, not because of any action by Consumers. The evidence is clear that at no time did Con-

---

[2] In *In re Alpena Power Co*, PSC Case No U-11622, decided September 28, 1998, the PSC ruled that the definition of customer in Rule 411(1)(a) does not allow a mere change in ownership or the identity of the individual, association, partnership, or corporation using power at a particular location to provide an opportunity for the new owner to switch power providers.

sumers ever waive its right to continue serving the customers on the property[3] and it never abandoned the facilities because the facilities remained and Consumers was prepared to provide electric service.

The PSC also emphasized Meijer's date of service request from Great Lakes, which was August 16, 1999, one day before it purchased the third parcel. Both the hearing referee and the dissenting commissioner noted that Meijer's delayed purchase of the third parcel was intentionally done to avoid a finding by the PSC that the discontinuation of service was directly related to the change in ownership because a mere change in ownership does not allow the customer to transfer to another utility. Indeed, Great Lakes freely admitted that Meijer "tailored its land purchases" so that none of the acquired property was being serviced by Consumers and Meijer could purport to choose its utility. Further, the third parcel, which Meijer always intended to purchase for its own purposes, was serviced by Consumers until after Meijer purchased the third parcel. Rule 411 says nothing about a request of service date as controlling the definition of customer, or of eliminating the first utility's entitlement to serve the entire electric load. Meijer's purchases of the three parcels did not give it the right to change to a new utility because the property had always been an existing customer of Consumers.

Although an administrative agency's interpretation of its own rule is entitled to deference, *Reiss v Pepsi Cola Metro Bottling Co, Inc*, 249 Mich App 631, 637; 643 NW2d 271 (2002), courts apply principles of statu-

---

[3] See Rule 411(12), which permits a utility to waive its rights to serve a customer or group of customers if another utility is willing and able to provide service and the PSC is notified and has no objections.

tory construction in construing administrative rules, *Detroit Base Coalition for the Human Rights of the Handicapped v Dep't of Social Services*, 431 Mich 172, 185; 428 NW2d 335 (1988), and the language of a statute is to be construed according to its plain meaning, *id.* Therefore, an agency interpretation cannot overcome the plain meaning of a statute, *Ludington Service Corp v Acting Comm'r of Ins*, 444 Mich 481, 505; 511 NW2d 661 (1994), amended 444 Mich 1240 (1994), or, in this case, the plain meaning of Rule 411. Considering the existing definition of "customer" in Rule 411(1)(a) as being the buildings and facilities served, the fact that Consumers was the first utility and is entitled to serve the entire electric load on the premises, and that existing customers shall not transfer from one utility to another, it is clear that Consumers is the utility entitled to service Meijer.

Accordingly, we conclude that Consumers has shown by clear and satisfactory evidence that the PSC's order is unlawful because it is based on an erroneous interpretation and application of Rule 411. Consumers is entitled to serve the entire electric load on Meijer's property.

Reversed.