Markman, J.
(concurring in part and dissenting in part). Although I concur in the majority’s holdings that the Public Service Commission (PSC) was not required to include interest on the refund it ordered Cherryland Electric Cooperative to pay and that the PSC was not required to impose a fine on Cherryland, I respectfully dissent from the majority’s holding that the right of Cherryland to provide electrical service to the property at issue was not extinguished when all the buildings on the property were demolished. Instead, I conclude that, pursuant to Mich Admin Code, R 460.3411 (Rule 411), once all the buildings on the subject property had been demolished, Cherryland no longer had any “customer” on the property, and, thus, its “entitle[ment] to serve the entire electric load on the premises of that customer” was extinguished. Accordingly, I would reverse the Court of Appeals’ judgment regarding the imposition of interest and a fine, vacate the remainder of the *47 Court of Appeals’ decision, and remand to the trial court for it to address the argument of Great Wolf Lodge of Traverse City, LLC, that it should not now be considered a Cherryland “customer,” even though Cherryland is currently serving Great Wolf Lodge, because Cherryland had coerced Great Wolf Lodge into becoming its “customer.”
I. STANDARD OF REVIEW
MCL 462.26(8) provides, “In all appeals under this section the burden of proof shall be upon the appellant to show by clear and satisfactory evidence that the order of the commission complained of is unlawful or unreasonable.” To declare a PSC order unlawful, “ ‘there must be a showing that the commission failed to follow some mandatory provision of the statute or was guilty of an abuse of discretion in the exercise of its judgment.’ ” In re MCI Telecom Complaint, 460 Mich 396, 427; 596 NW2d 164 (1999), quoting Giaras v Mich Pub Serv Comm, 301 Mich 262, 269; 3 NW2d 268 (1942). “The hurdle of unreasonableness is equally high. Within the confines of its jurisdiction, there is a broad range or ‘zone’ of reasonableness within which the [PSC] may operate.” In re MCI Telecom Complaint, 460 Mich at 427, citing Mich Bell Tel Co v Pub Serv Comm, 332 Mich 7, 26-27; 50 NW2d 826 (1952). In addition,
[w]hen considering an agency’s statutory construction, the primary question presented is whether the interpretation is consistent with or contrary to the plain language of the statute. While a court must consider an agency’s interpretation, the court’s ultimate concern is a proper construction of the plain language of the statute. rv?
... As established in [Boyer-Campbell Co v Fry, 271 Mich 282; 260 NW 165 (1935)], the agency’s interpretation *48 is entitled to respectful consideration and, if persuasive, should not be overruled without cogent reasons.... But, in the end, the agency’s interpretation cannot conflict with the plain meaning of the statute. [In re Complaint of Rovas Against SBC Mich, 482 Mich 90, 108; 754 NW2d 259 (2008).]
“In construing administrative rules, courts apply principles of statutory construction.” Detroit Base Coalition for the Human Rights of the Handicapped v Dep’t of Social Servs, 431 Mich 172, 185; 428 NW2d 335 (1988).
II. ANALYSIS
A. RIGHT TO SERVE
Rule 411(2) states that “[ejxisting customers shall not transfer from one utility to another.” Mich Admin Code, R 460.3411(2). Rule 411(11) provides that the “first utility serving a customer pursuant to these rules is entitled to serve the entire electric load on the premises of that customer even if another utility is closer to a portion of the customer’s load.” Mich Admin Code, R 460.3411(11). Rule 411(1)(a) defines “customer” as “the buildings and facilities served rather than the individual, association, partnership, or corporation served.” Mich Admin Code, R 460.3411(1)(a). And Mich Admin Code, R 460.3102(j) defines “premises” as “an undivided piece of land that is not separated by public roads, streets, or alleys.”
In In re Complaint of Consumers Energy Co, 255 Mich App 496; 660 NW2d 785 (2003), the subject property was purchased by Meijer, Inc., in August 1999. Consumers Energy Company provided electric service to the property from the 1940s until November 1999, when all the buildings on the property were demolished so that Meijer could build a store and gas station. After Great Lakes Energy Cooperative began providing *49 Meijer with electric service, Consumers filed a formal complaint against Great Lakes, alleging that the latter had violated Rule 411. Consumers argued that because it had continuously served the property and had never relinquished or abandoned its entitlement to do so, it was the “first utility” with respect to the property and, thus, was entitled to serve the entire electric load on the premises. The PSC rejected this argument and held that Meijer was not an “existing customer” of Consumers and, thus, was not obligated to receive its electric service from Consumers. However, the Court of Appeals reversed the PSC and held that Meijer was, in fact, an “existing customer” and, thus, that “Consumers [was] entitled to serve the entire electric load on Meijer’s property.” Id. at 504.
The Court of Appeals reached this conclusion by focusing on the fact that “a mere change in ownership does not allow the customer to transfer to another utility,” id. at 503, because the “customer” is not “the individual, association, partnership, or corporation taking service,” id. at 502, citing Rule 411(1)(a). The problem with the Court of Appeals’ opinion in Consumers Energy, however, is that, although it correctly recognized that the “customer” is not “the individual, association, partnership, or corporation served,” it failed to recognize that the “customer” is also not the property being served. Mich Admin Code, R 460.3411(1)(a). Instead, the “customer” consists of the “buildings and facilities served.” Id. Therefore, when all the buildings on a piece of property have been demolished, the utility no longer has an “existing customer” on the property to serve. That is, although a change in ownership does not by itself enable the new owner to transfer to another utility, the destruction of all the buildings on a piece of property does enable the new owner to do so, because that destruction is the *50 equivalent of the destruction of all the “existing customers.” And there are no rules or statutes that require a new “customer” to use the same electrical provider as the former “customer”; instead, the regulatory scheme provides merely that the same “customer,” as defined by the “buildings and facilities served,” must use the same electrical provider. Therefore, I believe the PSC correctly ruled in Consumers Energy that Consumers was not entitled to serve Meijer’s new store and gas station, and that the Court of Appeals erred by reversing that decision.
The Court of Appeals in the instant case, being bound by Consumers Energy but apparently unconvinced by its analysis, sought to distinguish the two cases. It did this by focusing on language in Consumers Energy, 255 Mich App at 503, that emphasized that “the discontinuation of service was directly related to the change in ownership . ...” It interpreted this language as “leav[ing] open the possibility that a discontinuation of service, and demolition of buildings coming about for reasons other than direct furtherance of a plan to change ownership or land uses, can indeed extinguish an existing customer.” Great Wolf Lodge of Traverse City, LLC v Pub Serv Comm, 285 Mich App 26, 38; 775 NW2d 597 (2009). That is, it interpreted Consumers Energy
as indicating that where service to buildings or facilities is interrupted, or buildings are demolished or facilities are removed, in direct connection with a change of ownership or land use, neither the service interruption nor the replacement of old buildings and facilities with new ones creates a new customer. To avoid interpreting that case, or the definition of “existing customer,” as locking an incumbent utility into that status for a given parcel in perpetuity if it so chooses, with no regard for periods of interruption in service or elimination of buildings and facilities, it is *51 necessary to recognize that some such interruption or elimination would indeed work an end to the utility-customer relationship. [Id. at 39-40.]
Accordingly, it held that
[i]f the changes in buildings and facilities and interruption of service came about in reasonable proximity to and for the purpose of a change in ownership and plan for the site, then under [Consumers Energy], those changes and that interruption did not create a new customer. If, however, the previous owner held on to the site for a significant period after all land uses requiring electricity had been abandoned, requested that electric service be terminated, and demolished buildings or removed facilities, or at least allowed them to stand without electricity, for reasons other than anticipation of an immediate change of ownership or land use, then those actions should be deemed to have extinguished the previously existing customer or customers on the site, thus severing the utility-customer relationship. [Id. at 40.][1]
The problem, of course, is that this distinction is nowhere to be found or implied in Rule 411. In my judgment, the Court of Appeals here was attempting to effect a compromise between the actual language of Rule 411 and Consumers Energy. The Court of Appeals apparently recognized that Rule 411 defines “cus *52 tomer” as “the buildings and facilities served,” rather than the parcel of land served. As it explained:
If Rule 411(1)(a) calls for carefully distinguishing between individuals, associations, partnerships, or corporations taking service from the buildings and facilities served, with only the latter two constituting a “customer,” it also demands distinguishing buildings and facilities served from the parcels served. The rule providing the definition could easily have stated that the customer was the parcel, but instead specified buildings and facilities. It follows, then, that where there are no buildings or facilities being served, there is no customer. [Great Wolf Lodge, 285 Mich App at 39.]
However, the Court of Appeals was nevertheless bound to follow Consumers Energy, which held that “for purposes of Rule 411, a change of ownership and demolition of all buildings served did not create a new customer.” Id. at 38. As a result, the Court of Appeals attempted to reconcile Rule 411 and Consumers Energy by holding that sometimes, as in Consumers Energy, a change of ownership and demolition of all buildings served does not create a new “customer,” while sometimes, as perhaps in the instant case, a change of ownership and demolition of all buildings served does create a new “customer.” Because this Court is not bound to follow Consumers Energy, I would hold that Consumers Energy was wrongly decided because it is inconsistent with Rule 411, which defines “customer” as “the buildings and facilities served” rather than the parcel of land served.
I agree with the Court of Appeals that the “customer” consists of “the buildings and facilities served”; the “customer” for purposes of the present dispute is neither the owner of the property nor the parcel of land. Therefore, “where there are no buildings or facilities being served, there is no customer.” Great Wolf Lodge, *53 285 Mich App at 39. However, I do not believe that it matters whether the “changes in buildings and facilities and interruption of service came about in reasonable proximity to and for the purpose of a change in ownership . ...” Id. at 40. Instead, I believe that if there are no buildings or facilities being served, there is no “customer,” regardless of why there are no buildings or facilities being served or when this came about. In Consumers Energy, once all the buildings on the property had been demolished, Consumers no longer had any “customers” on the property and therefore was no longer entitled, under Rule 411, to serve Meijer’s newly constructed store and gas station.
The same is true here. Once all the buildings on the property had been demolished, Cherryland no longer had any “customers” on the property and, therefore, was not entitled to serve Great Wolf Lodge’s newly constructed water-park resort. Rule 411(2) provides, “Existing customers shall not transfer from one utility to another.” Mich Admin Code, R 460.3411(2). Because Rule 411(l)(a) defines “customer” to mean “the buildings . . . served,” Mich Admin Code, R 460.3411(l)(a), it communicates by extrapolation that “[e]xisting [buildings served] shall not transfer from one utility to another.” In this case, once all the buildings had been demolished, Cherryland no longer had any “existing customer” on the property that was prohibited from transferring from one utility to another.
In addition, Rule 411(11) provides, “The first utility serving a customer pursuant to these rules is entitled to serve the entire electric load on the premises of that customer . .. .” Mich Admin Code, R 460.3411(11). Because Mich Admin Code, R 460.3411(1)(a) defines “customer” to mean “the buildings . . . served,” and Mich Admin Code, R 460.3102(j) defines “premises” to mean *54 “an undivided piece of land that is not separated by public roads, streets, or alleys,” Rule 411(11) by extrapolation communicates, “The first utility serving a [building] pursuant to these rules is entitled to serve the entire electric load on the [undivided piece of land] of that [building] . In this case, once all the buildings on the property had been demolished, there was no “utility serving a building,” and, therefore, no utility, including Cherryland, was “entitled to serve the entire electric load on the undivided piece of land of that [nonexisting] building.” And the new “customer,” i.e., Great Wolf Lodge’s newly constructed water-park resort, was not obligated under any provision of law to obtain its electric service from the previous customer’s electric service provider.
The majority holds that a utility’s “right to serve the entire electric load on the premises” of a “customer” is “unaffected by subsequent changes in the ‘customer[.]’ ” Ante at 41.1 do not necessarily disagree with this statement. For example, if Electric Company XYZ served a house on the subject property, Electric Company XYZ would be entitled to serve a subsequently built barn on the same property because, pursuant to Rule 411(11), a utility is “entitled to serve the entire electric load on the premises of that customer. . . .” This right is not affected when the “customer” changes from being only the house to being both the house and the barn. However, what the majority fails to recognize is that because “customer” is defined as “the buildings .. . served,” Mich Admin Code, R 460.3411(l)(a), if there are no buildings on the property, there are no “customers” on the property. And if there are no “customers” on the property, there is no longer any “first [or second or third] utility serving a customer [that] is entitled to serve the entire electric load on the premises of that customer .. ..” Mich Admin Code, R *55 460.3411(11). That is, the majority overlooks what I view as the dispositive difference between a “customer” changing and a “customer” being eliminated.
The majority focuses on the fact that Rule 411(11) states that the utility is “entitled to serve the entire electric load on the premises of that customer .. ..” (Emphasis added.) However, in doing so, the majority loses sight of the fact that in order for there to be a right to serve the entire “premises,” the utility has to first be serving some “customer” on the “premises.” In this case, once all the buildings on the property had been demolished, Cherryland was no longer serving any “customers” on the property and, therefore, no longer possessed any right to serve the entire “premises.” That is, it was no longer “entitled to serve the entire electric load on the premises of that [nonexisting] customer.” Mich Admin Code, R 460.3411(11). The fact that there is now a new “customer,” i.e., building, on the property does not change this result because there are no rules or statutes that require a new “customer” to be served by the same electric utility that served the previous “customer” on the same piece of property.[2]
*56 The majority essentially relies on the use of the term “premises” in Rule 411(11) to redefine “customer” to mean “premises.” The majority holds that a utility has a right to serve the entire “premises” of a “customer,” even after that “customer” ceases to exist. The only way to reach this conclusion is to redefine “customer” to mean “premises.” However, Rule 411(1)(a) clearly defines “customer” to mean “the buildings . . . served[.]” The majority suggests that it must read “premises” in the way that it does in order to give the word some meaning. However, that is not the case because, although “premises” may not have the meaning that the majority ascribes to it, it does have a meaning of alternative significance: it means that the first utility serving a “customer” on a piece of property is entitled to serve all the “customers” on that property. As the Court of Appeals explained, “Rule 411(11) concerns extensions of service on premises already being served, and guards against any single premises being served by multiple utilities.” Great Wolf Lodge, 285 Mich App at 36. Without the phrase “on the premises” in Rule 411(11), this very considerable protection for utilities would not exist. Therefore, “premises” need not be misconstrued in order to give it substantive meaning.
Although an “agency’s interpretation is entitled to respectful consideration and, if persuasive, should not be overruled without cogent reasons,” Rovas Complaint, 482 Mich at 108, it must not be forgotten that in Consumers Energy, when all the buildings that Consumers Energy had served had been demolished by Meijer, the PSC concluded that Meijer did not consti *57 tute an “existing customer” of Consumers, and the Court of Appeals reversed. Therefore, the PSC’s decision here that Great Wolf Lodge is an “existing customer” of Cherryland may well have been a result of the Court of Appeals’ interpretation of Rule 411 in Consumers Energy, rather than the PSC’s own interpretation of the rule. Furthermore, even assuming that the PSC’s decision was based on its own interpretation of Rule 411, for the reasons discussed earlier, that interpretation is not persuasive and there are, in fact, “cogent” reasons to overrule it. Great Wolf Lodge, in my judgment, has fully met its burden of showing by clear and satisfactory evidence that the PSC’s decision was inconsistent with the law.
However, there is no dispute that Cherryland is currently rendering electric service to Great Wolf Lodge. Great Wolf Lodge has consistently argued that this should not prevent it from transferring to another utility because the only reason Cherryland is serving Great Wolf Lodge is that Cherryland refused to remove its service drop so that the buildings could be demolished and the water-park resort could be built. Great Wolf Lodge raised this issue before the PSC, the trial court, the Court of Appeals, and this Court. The PSC summarized Great Wolf Lodge’s argument as follows: Great Wolf Lodge “had a choice of electric service providers in 2001” and “because that choice was thwarted by Cherryland’s refusal to remove the service drop, the [PSC] should now declare that [Great Wolf Lodge] has full choice in transmission and distribution services.” The PSC rejected this argument, stating that Great Wolf Lodge “has not cited any legal authority as a basis for the [PSC] to grant the relief sought under the circumstances of this case.” However, neither the trial court nor the Court of Appeals addressed this *58 issue. Therefore, I would remand this case to the trial court for it to be addressed.[3]
B. INTEREST
I agree with the majority that the PSC was not required to award interest on the refund it ordered Cherryland to pay. Although Detroit Edison Co v Pub Serv Comm, 155 Mich App 461, 469; 400 NW2d 644 (1986), held that the PSC possesses the authority to award interest on refunds, it did not require the PSC to award interest. Because no statute, rule, or caselaw requires the PSC to award interest on refunds, Great Wolf Lodge has not satisfied its burden of showing by clear and satisfactory evidence that the PSC’s decision to not award interest was unlawful or unreasonable. See MCL 462.26(8).
C. FINE
I also agree with the majority that the PSC was not required to impose a fine on Cherryland. MCL 460.558 provides that “[a]ny corporation. . . [that] wilfully or knowingly fails or neglects to obey or comply with [a *59 PSC] order or any provision of this act [1909 PA 106; MCL 460.551 et seq.] shall forfeit to the state of Michigan not to exceed the sum of 300 dollars for each offense.” Contrary to the Court of Appeals’ conclusion, this language does not encompass mere negligent noncompliance; otherwise, there would have been no need to include the language “wilfully or knowingly” within this statute. “Wilfully or knowingly” modifies both “fails” and “neglects,” and, therefore, the PSC is required to impose a fine only where a utility “wilfully or knowingly” “fails,” or “wilfully or knowingly” “neglects,” to “obey or comply with [a PSC] order.” MCL 460.558.
In the instant case, the PSC determined that Cherryland’s understanding of the PSC’s July 22, 2004, order was not unreasonable, and, therefore, Cherryland did not “wilfully or knowingly” fail or neglect to obey or comply with this order. In its July 22, 2004, order, the PSC ordered Cherryland to charge Great Wolf Lodge the large resort service (LRS) rate. Four months later, Cherryland began to charge Great Wolf Lodge the higher large commercial and industrial (LCI) rate. According to Cherryland, it did this because Great Wolf Lodge was not satisfying the 1,500-kilowatt minimum monthly load requirement that must be met for the LRS rate to be charged. The PSC explained that when it ordered Cherryland to charge the LRS rate, it assumed that Great Wolf Lodge was in compliance, and would remain in compliance, with the terms and conditions of the LRS rate, and therefore it did not address what Cherryland should do if Great Wolf Lodge failed to comply with the load requirement for the LRS rate. The PSC concluded that, although “Cherryland should have sought clarification of the July 22 order,” “Cherryland’s interpretation of the July 22 order was not so clearly unreasonable as to justify the imposition of a fine . .. .” *60 In other words, because Cherryland reasonably believed that the PSC’s July 22, 2004, order did not preclude it from charging Great Wolf Lodge the LCI rate if Great Wolf Lodge was not complying with the load requirement for the LRS rate, it did not “wilfully or knowingly fail[] or neglect[] to obey or comply with such order.” See MCL 460.558. Accordingly, Great Wolf Lodge has not satisfied its burden of showing by clear and satisfactory evidence that the PSC’s decision to not impose a fine was unlawful or unreasonable. MCL 462.26(8).
III. CONCLUSION
Once all the buildings on the property had been demolished, Cherryland no longer had any “customer” on the property, and, therefore, its right to provide electric service to the property was extinguished. Because no rule, statute, or caselaw requires the PSC to impose interest on refunds, the PSC was not required to impose interest on the refund at issue. Finally, because Cherryland did not “willfully or knowingly fail[] or neglect[] to obey or comply with [the PSC’s July 22, 2004] order,” MCL 460.558, the PSC was not required to impose a fine on Cherryland. Accordingly, I would reverse the Court of Appeals’ judgment regarding the imposition of interest and a fine, vacate the remainder of the Court of Appeals’ decision, and remand to the trial court for it to address Great Wolf Lodge’s argument that it should not now be considered a Cherryland “customer,” even though Cherryland is currently serving Great Wolf Lodge, because Cherryland had coerced Great Wolf Lodge into becoming its “customer.”
Hathaway and Zahra, JJ., concurred with Markman, J.

 Because the Court of Appeals could not determine from the record whether the discontinuation of service was directly related to the change in ownership, it remanded this case to the PSC “for full factual development, findings, and conclusions in this regard.” Great Wolf Lodge, 285 Mich App at 41. It also
vaeate[d] the [PSC’s] holding, and the circuit court’s affirmance, that Cherryland is entitled to continue serving Great Wolf [Lodge]; clarified] that for purposes of Rule 411, “customer” means buildings and facilities, not the land on which they once stood; [and] declare[d] that a significant interruption of service to buildings or facilities can extinguish the existence of an existing customer in some situations^] [Id.]

 The majority suggests that this interpretation is inconsistent with the rule’s “purpose of avoiding unnecessary duplication of electrical facilities” because when a piece of property is subdivided, new “customers” that would be free to contract with different utility companies would be created. Ante at 39-40 & n 22. However, the majority fails to apprehend the significance of Rule 411(14). This rule provides, “Regardless of other provisions of this rule,... a utility shall not extend service to a new customer in a manner that will duplicate the existing electric distribution facilities of another utility, except where both utilities are within 300 feet of the prospective customer.” Mich Admin Code, R 460.3411(4). Therefore, the majority’s concerns about the duplication of electrical facilities when property is subdivided need not influence its interpretation of Rule 411(11). Contrary to the majority’s contention, Rule 411(14) is not an “irrelevant distraction.” Ante at 40 n 20. Indeed, given that the majority believes that it is important enough to point out that its interpretation of Rule 411(11) is “consistent with the rule’s purpose of avoiding unneces *56 sary duplication of electrical facilities,” ante at 39, I believe that it is equally relevant to point out that, regardless of Rule 411(11), Rule 411(14) clearly serves the same purpose.

 To the extent that Great Wolf Lodge argues that it should be allowed to obtain service from Traverse City Light & Power (TCLP), a municipal corporation not subject to PSC regulation, MCL 124.3(2) is applicable. MCL 124.3(2) provides, “A municipal corporation shall not render electric delivery service for heat, power, or light to customers outside its corporate limits already receiving the service from another utility unless the serving utility consents in writing.” MCL 460.10y(2), like Rule 411(1)(a), defines “customer” as “the building or facilities served . ...” In this case, once all the buildings on the property had been demolished, there were no “customers . . . already receiving [electric] service from another utility,” and, thus, at that point, MCL 124.3(2) would not have prevented Great Wolf Lodge from obtaining service from TCLP However, whether the fact that the water-park resort is now receiving electric service from Cherry-land prevents the resort from obtaining service from TCLP instead is a question that the trial court should address on remand.