*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GREAT LAKES ENERGY COOPERATIVE,

      Plaintiff-Appellant,

v

CITY OF PETOSKEY,

      Defendant-Appellee.

FOR PUBLICATION
February 17, 2026
10:50 AM

No. 372750
Emmet Circuit Court
LC No. 24-108391-CZ

Before: SWARTZLE, P.J., and MALDONADO and ACKERMAN, JJ.

MALDONADO, J.

Plaintiff, the Great Lakes Energy Cooperative, appeals by right the trial court's order granting defendant, the City of Petoskey, summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). On appeal, plaintiff contends that the trial court erred because MCL 124.3[1] prohibits defendant from providing electricity to a new housing subdivision on a parcel of land on which plaintiff already provides electricity to another building. We affirm.

## I. BACKGROUND

Plaintiff is a member-owned electric cooperative that has provided electricity in Emmet County, including Resort Township, since 1938. Defendant has a nonexclusive franchise to provide electricity in Resort Township. In this way, Resort Township allows both parties to provide electric service within its borders. In April 2024, nonparty Midwest Properties asked defendant to provide electricity to nine new residential homes in a new subdivision that it was developing outside defendant's corporate limits. The parties agree that the land on which the subdivision rests, a small portion of Parcel 200-032, was vacant for at least three years before its development. However, plaintiff had supplied electricity to a garage located on Parcel 200-032, *outside* of the subdivision. Plaintiff argued that MCL 124.3 (which creates a "no switch" rule)

---

[1] MCL 124.3 is a statutory provision within the intergovernmental contracts between municipal corporation act, MCL 124.1 *et seq*.

when read together with Michigan Public Service Commission (PSC)[2] Rule 411[3] (which creates a "right of first entitlement") prohibited defendant from servicing the subdivision because defendant would be poaching plaintiff's existing customer. On that basis, plaintiff sued for declaratory judgment and injunctive relief to enjoin defendant from servicing the subdivision.

The trial court denied the injunction, and defendant moved for summary disposition under MCR 2.116(C)(10). Defendant argued that Rule 411 did not apply to municipal utilities and that MCL 124.3 did not prohibit defendant from providing electrical service because it was not disputed that the land on which the subdivision was being built had been vacant. Consequently, there were no buildings or facilities, and therefore no existing customers, that plaintiff had served.

The trial court granted the motion for summary disposition, finding that plaintiff "has not provided electric service to the buildings or facilities that have been [con]structed to date in [the] subdivisions." Accordingly, under MCL 124.3, plaintiff did not have "a customer that is currently receiving or within the previous 3 years has received the service from another utility." The court further explained that Rule 411, which could have given plaintiff a right of first entitlement over the entirety of Parcel 200-032, was inapplicable to defendant as a municipality. Moreover, the Legislature had not incorporated Rule 411's right of first entitlement into MCL 124.3. Therefore, MCL 124.3 did not bar defendant from providing electric services to new customers in the subdivision.

This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion made under MCR 2.116(C)(10) is properly granted when there are no disputed material facts and, viewing the evidence in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. *Id*. at 160.

Likewise, this case also involves the interpretation of administrative rules and statutes. Statutory interpretation is a question of law that we review de novo. *City of Coldwater v Consumers Energy Co*, 500 Mich 158, 167; 895 NW2d 154 (2017). "The foremost rule, and our primary task in construing a statute, is to discern and give effect to the intent of the Legislature. We begin by examining the language of the statute, which provides the most reliable evidence of its intent." *Id*. (quotation marks, citations, and alteration omitted).

---

[2] The PSC is an independent utility regulator "vested with complete power and jurisdiction to regulate all public utilities in the state except a municipally owned utility, the owner of a renewable resource power production facility as provided in [MCL 460.6d] and except as otherwise restricted by law." MCL 460.6(1).

[3] Mich Admin Code, R 460.3411(1)(a) ("Rule 411").

If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted. Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to ascertain legislative intent. [*Id.*, quoting *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).]

Courts apply these same principles when construing administrative rules. *City of Coldwater*, 500 Mich at 167.

## III.  ANALYSIS

Plaintiff argues that, under the new definition of "customer" in MCL 124.3(3)(a), the first-serving utility on a parcel has the right to provide electricity to the entire premises on which any buildings or facilities are located. To our knowledge, this Court has not yet interpreted MCL 124.3(3)(a), which was added in 2018 PA 516, making this a matter of first impression. After careful review of the plain text of the amendment, as well as the entire relevant legislative framework, we disagree with plaintiff's position.

We start by acknowledging the complex and costly infrastructure investment required to provide electricity to any given parcel of land. Because of the costs and risks attendant to utility investments, various regulatory provisions seek to reduce competition, and duplication of facilities, in the electric service market. See, e.g., *Huron Portland Cement Co v Pub Serv Comm'n*, 351 Mich 255, 267-268; 88 NW2d 492 (1958) (noting these purposes as the reason for certificates of convenience and necessity). MCL 124.3 is one such provision. It states, in relevant part, as follows:

> (1) A municipal corporation may contract for adequate consideration with a person or another municipal corporation to furnish to property outside the municipal corporate limits any lawful municipal service that it is furnishing to property within the municipal corporate limits. . . .
>
> * * *
>
> (2) A municipal corporation shall not render electric delivery service for heat, power, or light outside its corporate limits to a customer that is currently receiving or within the previous 3 years has received the service from another utility unless the serving utility consents in writing.

In sum, a municipality may provide electric service outside its corporate limits, but under this no-switch rule, may not poach certain customers. Previously undefined, the Legislature defined "customer" in 2018 PA 516 as "only the building or facilities served rather than the individual, association, partnership, corporation, governmental body, or other entity taking service." MCL 124.3(3)(a).

Applying the plain language to the present case is rather straightforward. The "customer" at issue is the assortment of buildings and facilities constructed within the new subdivision. It is

undisputed that these buildings and facilities are neither now, nor have been in the last three years, serviced by plaintiff nor anyone else. It follows then that MCL 124.3(2) does not preclude defendant from servicing the new subdivision.

Plaintiff's position to the contrary, though well-crafted, is not persuasive. Plaintiff argues that the entire parcel is its customer because plaintiff has infrastructure on the parcel and is servicing a garage on the end of the parcel outside the subdivision. But MCL 124.3(2)'s prohibition does not hinge upon whether an electric utility has infrastructure or serves a different customer (building or facility), anywhere on the parcel. The statute instead concerns the customer, i.e., the buildings or facilities, sought to be serviced. Here, that customer is a brand-new subdivision, never previously serviced. That plaintiff services a different building (customer) on the same parcel is not relevant to the statutory analysis.

This conclusion is confirmed by the broader statutory context. Other statutes and regulations have nearly identical provisions in different contexts, but some also contain provisions that do not appear in MCL 124.3 that might have supported plaintiff's argument had the Legislature seen fit to enact them in the present context. As discussed, MCL 124.3 prevents *municipal* utilities from poaching customers from *public* utilities. MCL 460.10y(2) is a mirror statute that prevents *public* utilities from poaching customers from *municipal* utilities:

> Except with the written consent of the municipally owned utility, a person shall not provide delivery service or customer account service to a customer that is currently receiving or within the previous 3 years has received that service from a municipally owned utility. As used in this subsection, "customer" means only the building or facilities served rather than the individual, association, partnership, corporation, governmental body, or other entity taking service.

This same definition of "customer" is found in PSC Rule 411. But as noted, Rule 411 is an administrative regulation that does not apply to municipal utilities. See MCL 460.6(1); *City of Coldwater*, 500 Mich at 164 ("We hold that Rule 460.3411 (Rule 411) of the Michigan Administrative Code is inapplicable when a municipal utility is involved and has not consented to the jurisdiction of the [PSC].").

Importantly, unlike MCL 124.3, Rule 411 also includes a first-entitlement provision that expands the first-serving utility's preclusive reach: "The first electric utility or cooperative serving a customer pursuant to these rules is entitled to serve the entire electric load on the *premises* of that customer even if another electric utility or cooperative is closer to a portion of the customer's load." Rule 411(11) (emphasis added). "Premises" is defined as "an undivided piece of land that is not separated by public roads, streets, or alleys." Mich Admin Code R 460.3102(p). In other words, if a utility is serving a customer on certain premises, the utility has the right to serve the *entire* premises.

A first-entitlement provision might have supported plaintiff's position if it were included in MCL 124.3. As noted, plaintiff is serving a garage on the parcel on which the subdivision rests, so under such a rule, plaintiff could be entitled to serve the entire *premises*, including the new subdivision. But as will be discussed more thoroughly, the Legislature did *not* include a first-

entitlement provision in MCL 124.3. Any conclusion about the result of such a provision is therefore hypothetical here, and this Court need not decide it. Rather, under the plain text of MCL 124.3, the question is whether the buildings and facilities composing the new subdivision are receiving, or within the past three years have received, electric service from another utility. And it is undisputed that these buildings and facilities are neither now receiving, nor within the past three years have received, electric services from another utility. Accordingly, MCL 124.3(2)'s no-switch rule is inapplicable.

Plaintiff's lone textual argument to the contrary is that the Legislature intended to differentiate between the *land* being served and the *individual* being served, otherwise it would not have included "rather than the individual, association, partnership, corporation, governmental body, or other entity taking service" with the definition of "customer." But this language is not surplusage under this Court's interpretation: the Legislature did not differentiate the *land* from the entity, it differentiated the *buildings or facilities* from the entity. Had the Legislature meant to distinguish the land, it could have done so expressly.

## IV. STATUTORY HISTORY AND CASELAW

Plaintiff's remaining arguments are unavailing. Plaintiff primarily relies on the caselaw leading up to the 2018 amendment that added the definition of "customer." This caselaw is indeed part of the statutory history of the provision, which can be helpful in interpreting a statute. See *People v Pinkney*, 501 Mich 259, 276 n 41; 912 NW2d 535 (2018). But although statutory history is an important part of a statute's context, "[i]f the language of a statute is clear and unambiguous, the plain meaning reflects the legislative intent and judicial construction is not permitted." *Daher v Prime Healthcare Servs-Garden City, LLC*, ___Mich___, ___; ___NW2d___ (2024) (Docket No 165377) (quotation marks and citation omitted); slip op at 5. As discussed, the amendment is plain, clear, and unambiguous, so it is unnecessary to delve into the winding and complex caselaw that predates the legislative change.

Nevertheless, for completeness, we explore plaintiff's reliance on a number of cases, the first of which is *In re Complaint of Consumers Energy Co*, 255 Mich App 496; 660 NW2d 785 (2003). There, Meijer, Inc. purchased the property at issue in August 1999. *Id.* at 498. Consumers Energy had provided electric services from the 1940s until November 1999, when all then-existing buildings on the property were demolished. *Id.* at 498-499. Consumers filed a complaint when Great Lakes Energy Cooperative began providing electric service to Meijer, claiming a right of first entitlement for having continuously served the property and never relinquishing its right to do so. *Id.* at 499. Importantly, both utilities were regulated by the PSC, so Rule 411 (which does not apply in the present case) was at the heart of this Court's analysis.

This Court cited numerous provisions in Rule 411 when ruling that Meijer's property was an existing customer therefore not entitled to switch service to Great Lakes. In addition to the definition of "customer" in Rule 411(1)(a), which is identical to that in MCL 124.3(3)(a), this Court relied on Rule 411(2) (the no-switch provision) and Rule 411(11) (the first-entitlement provision). *Complaint of Consumers Energy*, 255 Mich App at 501-504. This Court found it important that the service from Consumers was discontinued at the request of the owner (Meijer) and not the utility (Consumers) and held that a mere change in ownership of the property did not

authorize the switching of utilities. *Id.* at 502-503. In so concluding, this Court referred to Rule 411's definition of "customer" *but also* expressly referenced its first-entitlement provision:

> Considering the existing definition of 'customer' in Rule 411(1)(a) as being the buildings and facilities served, the fact that Consumers was the first utility and is entitled to serve the entire electric load on the premises, and that existing customers shall not transfer from one utility to another, it is clear that Consumers is the utility entitled to service Meijer. [*Complaint of Consumers Energy*, 255 Mich App at 504.]

The holding in *Complaint of Consumers Energy* therefore did not turn solely on the definition of "customer." And even so, the problem *Complaint of Consumers Energy* addressed was the effect of a change of ownership or land use on the existence of a new customer. According to *Complaint of Consumers Energy*, a utility did not lose its right of first entitlement when a new property owner tore down buildings pursuant to a plan to change land use. *Id.* at 502-504. But those circumstances are not present here: ownership of serviced buildings or facilities has not changed, services have not been interrupted, and buildings or facilities have not been demolished.

Further, despite a stray comment that could be read to suggest that the "customer" is the parcel or property itself, *Complaint of Consumers Energy* does not stand for such a proposition. See *Complaint of Consumers Energy*, 255 Mich App at 502, 503 ("Moreover, the evidence shows that the Meijer property is an existing customer as that term is defined in [Rule 411]," and there was no "right to change to a new utility because the property had always been an existing customer of Consumers."). As this Court has explained, the definition of "customer" itself carefully distinguishes the owner of the property from the buildings and facilities served, and also "buildings and facilities served from the parcels served," noting that "[t]he rule providing the definition could easily have stated that the customer was the parcel, but instead specified buildings and facilities," and holding therefore that "where there are no buildings or facilities being served, there is no customer." *Great Wolf Lodge v Pub Serv Comm'n*, 285 Mich App 26, 38; 775 NW2d 597 (2009). This Court has attributed the statements about parcels in *Complaint of Consumer Energy* to its reliance on Rule 411(11), which *does* expressly address the premises on which the buildings and facilities stand. This Court determined:

> In light of [Rule 411(11)], this Court's statements [in *Complaint of Consumer Energy*] referred simply to property upon which an existing customer stood, such that extensions of service upon the property should be the business of the incumbent utility. Even when viewed in isolation, the statements do not suggest that the question of equating "customer," for purposes of identifying an existing one, with the "parcel" served was raised or decided. To take the Court's references to "property" to indicate that the parcel, apart from its buildings and facilities, was itself the "customer" is to misread the statements. [*Id.* at 39.]

The narrow definition of "customer" was important in *Great Wolf Lodge*, another case that plaintiff relies on. The facts in that case are easily distinguishable from those of the present case. In *Great Wolf Lodge*, Great Wolf, a resort and water park in Traverse City, purchased property that had been served by Cherryland Electric Cooperative. *Great Wolf Lodge*, 285 Mich App at 31.

Great Wolf then entered into a contract for electric service with Traverse City Light & Power (TCL&P), a municipal utility. *Id.* Because of problems with construction of Great Wolf's resort, Great Wolf terminated its agreement with TCL&P and agreed to a three-year contract with Cherryland. *Id.* But after Cherryland increased rates, Great Wolf sought a declaratory ruling that it would be free to select a different utility after the contract with Cherryland expired. *Id.* at 32.

Because Great Wolf sought broad relief—a ruling that would potentially allow it to contract either with a private utility under Rule 411 or a municipal utility under MCL 124.3—this Court addressed both authorities. In applying Rule 411 and *Complaint of Consumers Energy*, this Court remanded the case to determine whether "changes in buildings and facilities and interruption of service came about in reasonable proximity to and for the purpose of a change in ownership and plan for the site. . . ." *Great Wolf Lodge*, 285 Mich App at 40. As to MCL 124.3, this Court applied a different version of the statute than the current one. For one thing, the statute in effect at the time did not define "customer." Moreover, the prohibition of switching utilities was slightly different: "A municipal corporation shall not render electric delivery service for heat, power, or light to customers outside its corporate limits *already receiving* the service from another utility unless the serving utility consents in writing." MCL 124.3(2), as amended by 2000 PA 155 (emphasis added).

This Court in *Great Wolf* supplied the definition of "customer" by incorporating that in MCL 460.10y(2), which mirrors the present definition. *Great Wolf Lodge*, 285 Mich App at 42-43. At issue was whether the buildings or facilities were " 'already receiving' electric service from Cherryland at the time Great Wolf came to the site and sought service from TCL&P." *Id.* at 43. This Court remanded the case to the trial court for consideration of this question under both Rule 411 and MCL 124.3. *Great Wolf Lodge*, 285 Mich App at 44-45.

The Supreme Court reversed, holding that Rule 411, not MCL 124.3, applied, despite that TCL&P was a municipal utility, because Rule 411(11) gave Cherryland the right of first entitlement to the entire premises against all other utilities. *Great Wolf Lodge of Traverse City, LLC v Pub Serv Comm*, 489 Mich 27, 46; 799 NW2d 155 (2011), overruled in part by *City of Coldwater*, 500 Mich at 171-172. The Supreme Court determined that the right of first entitlement persisted despite changes in the customer, because Rule 411(11) applied to the "premises." *Great Wolf Lodge*, 489 Mich at 41. The thrust of the case thus centered on Rule 411(11), which no one disputes is inapplicable here, and which has no analogue in MCL 124.3.

At any rate, in *City of Coldwater*, 500 Mich 158, the Supreme Court overruled its holding in *Great Wolf Lodge* that Rule 411 applied when a municipal utility was involved. There were two consolidated cases in *City of Coldwater*. The first involved a parcel with a vacant building, service to which had been discontinued before a municipal utility, the Coldwater Board of Public Utilities, purchased the property. *Id.* at 164. The municipal utility sought to demolish the building and provide its own service to the property; Consumers Energy, who had provided service to the vacant building before it was discontinued, objected on the basis of Rule 411. *Id.* at 165. The second case involved another municipal utility, the Holland Board of Public Works. *Id.* A nonprofit sought to purchase a vacant parcel, the buildings on which had been demolished; electric service was no longer being provided, but Consumers had been the provider years earlier. *Id.* The nonprofit selected the Holland Board of Public Works as its utility, but Consumers objected, again on the basis of Rule 411. *Id.* at 166.

In the underlying case involving the Holland Board of Public Works, this Court rejected a similar argument to one plaintiff makes here "that the definition of 'customer' should be interpreted, for purposes of MCL 124.3, to mean the premises of the buildings and facilities served." *City of Holland v Consumers Energy Co*, 308 Mich App 675, 697; 866 NW2d 871 (2015). Consumers there relied on Rule 411(11) for its contention, but this Court observed that the rule "does not expand the definition of 'customer' in Rule 411(1)(a), let alone the definition in MCL 124.3," but rather "is a separate provision that defines the scope of what the first utility may serve," which "distinctly states that the utility may serve the premises *of the customer*" while not including "premises" within the definition of "customer." *City of Holland*, 308 Mich App at 697. Accordingly, the municipal utility could properly provide electric service. *Id.* at 692-693.

The Supreme Court affirmed this outcome. *City of Coldwater*, 500 Mich 158.[4] First, as noted, the Supreme Court held that Rule 411 was inapplicable to municipal entities, and therefore that MCL 124.3, as amended by 2000 PA 155, applied instead of Rule 411. *City of Coldwater*, 500 Mich at 174. The Supreme Court then interpreted MCL 124.3, applying a dictionary definition of "customer" (rather than the definition in MCL 460.10y(2)). Under the dictionary definition, the *entity* receiving the service was the customer. The Supreme Court concluded that the customer had to be currently receiving service for the statute to apply because the no-switch rule applied only if a customer was "already receiving" service. *Id.* at 176-177. The Court therefore held that MCL 124.3(2) did not prevent the municipal entities from servicing the properties because there were no entities currently receiving service from Consumers. *City of Coldwater*, 500 Mich at 177-178. The Court acknowledged that "gamesmanship" could occur from its interpretation but doubted that utility customers would shut off services simply to switch providers. *Id.* at 178.

The Legislature evidently disagreed about the potential for gamesmanship. In response to the Supreme Court's decision, the Legislature amended MCL 124.3 into its present form, providing a definition of "customer" and removing the "already receiving" language in exchange for "currently receiving." 2018 PA 516. The result is that a customer is a building or facility rather than an entity, and the no-switch rule applies if the customer is currently receiving, or has received, service from another utility in the previous three years. MCL 124.3.

From the face of the amendments, this Court concludes only that the Legislature intended to limit the definition of "customer" to buildings and facilities, to the exclusion of entities, and to expand the no-switch rule to cover a broader range of customers than only those "already receiving" service. Despite that the Legislature had *Coldwater*'s ruling on the inapplicability of Rule 411, the Legislature chose not to make Rule 411 applicable to municipalities or to enact a right of first entitlement within MCL 124.3 like the one in Rule 411(11). Such amendments would have, at least in part, restored *Great Wolf Lodge*'s holding, which easily could have been accomplished. Plaintiff argues that this Court should reach this result by interpreting "customer" to refer to the land or premises, not simply buildings or facilities. But, as discussed, this Court

---

[4] On appeal, plaintiff asserts the Supreme Court "set aside" this Court's opinion in *City of Holland*. To be sure, the Supreme Court relied on different reasoning to reach its conclusion. But it nowhere cast doubt on this Court's interpretation of the definition of "customer." Consequently, *City of Holland* remains at least highly persuasive.

rejected similar arguments in the past, and we do so again here in light of the plain language of the statute.

Plaintiff also complains that if the trial court's decision is affirmed, the result in *City of Coldwater* will not have been effectively reversed by the 2018 amendment. Plaintiff's argument is misdirected. This Court is not required to view *City of Coldwater* in a different light under the subsequent 2018 amendment. The Supreme Court did not address the present question, not only because the statutory text differed, but also because the relevant facts differed. Plaintiff's claim here largely, if not wholly, depends on plaintiff's provision of service to a garage on the parcel containing the new subdivision, and there were no analogous structures in *City of Coldwater*. Nothing in that case suggests that the Supreme Court intended to engraft a first-entitlement rule onto MCL 124.3.

The statutory history and caselaw therefore do not support plaintiff's position. The Legislature did not broadly undo *City of Coldwater* by making Rule 411, particularly Rule 411(11), applicable to municipal entities. In addition, the caselaw involved in the statutory history rejected plaintiff's attempt to equate buildings and facilities with premises or parcels. This Court—especially in *City of Holland*—made clear that the term "customer" does not cover the entire premises or parcel on which buildings or facilities stand.

## V. OTHER LEGISLATIVE HISTORY

Plaintiff also relies on extratextual materials to press its interpretation of the statute. In particular, plaintiff reproduces a letter from the Michigan Municipal Electric Association (MMEA) to the Legislature about the amendment. But this short letter does not carry the day for plaintiff. For one thing, courts "do not resort to legislative history to cloud a statutory text that is clear." *In re Certified Question*, 468 Mich 109, 116; 659 NW2d 597 (2003) (quotation marks and citations omitted). The Supreme Court has cast doubt on the usefulness of official legislative analyses, characterizing them as "[o]f considerably diminished quality as legislative history," along with other "forms [of history] that do not involve an act of the Legislature." *Id.* at 115 n 5. The letter here was not a product of the legislative branch. To the extent that it constitutes legislative history at all, it is of "considerably diminished quality."

Also, this letter sheds little light on the intent of the Legislature and offers plaintiff no help. At most, plaintiff can cite it for the proposition that the amendment sought "[t]o place municipally owned, rural electric cooperatives, and investor-owned utilities on a level playing field" by offering a definition of "customer." But the letter nowhere suggests that the entire Rule 411 was being legislatively adopted, whether to create a level playing field or otherwise. And it describes other parts of the amendment narrowly as "prevent[ing] a customer from simply requesting that their existing utility disconnect electric service, and soon after request another utility to provide service."

The letter itself also counters plaintiff's suggestion that the amendments were intended to reverse the result of *City of Coldwater*. The letter asserts that the MMEA sought to retain "the benefit of being the prevailing party in the 2017 MSC decision, while also resolving unintended consequences of that decision." In short, nothing in the letter indicates that the Legislature

intended to give a utility a right of first entitlement to serve a subdivision based on the utility's toehold of service to a garage on a part of the parcel apart from that subdivision.

Finally, plaintiff asserts that the trial court's decision ignored a supposed policy against duplication of utility services. For its part, defendant contends that it has provided services in the area for decades and that plaintiff lacks any infrastructure within the subdivision. Whatever the case, plaintiff has failed to cite any authority that expressly prohibits potential duplication of services. At best, plaintiff infers such a policy in MCL 124.3 from the broad purposes it ascribes to the 2018 amendment. But, as shown above, those inferences are unfounded. And, in any event, the supposed inference cannot overcome the ordinary meaning of the statutory text, which nowhere contains a proscription of duplicate services.

## VI. CONCLUSION

We conclude that trial court did not err by determining that the definition of "customer" in MCL 124.3(3)(a) does not prevent defendant from providing service to the new subdivision at issue in this case. Neither the plain language of MCL 124.3, the relevant caselaw, nor the legislative history warrants reversal.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Brock A. Swartzle
/s/ Matthew S. Ackerman